**STATE of Iowa, Appellant,**

**v.**

**The Honorable William S. CAHILL, Judge of the First Judicial District of Iowa in and for Des Moines County, Appellee.**

**No. 54277.**

Supreme Court of Iowa.

May 5, 1971.

Alan N. Waples, County Atty., for appellant.

Dailey, Dailey, Ruther & Bauer, Burlington, for appellee.

BECKER, Justice.

William Edward Miler is accused of murder in connection with the death of an 18-month-old child. He filed a motion to suppress the testimony of Diane Rose Miler, his present wife. Evidentiary hearing on the motion resulted in a court finding that the evidence would be suppressed. The State was granted leave to file a writ of certiorari. We sustain the writ.

On the afternoon of April 12, 1969, the infant Jeffrey Rose was taken to the emergency room of the Burlington Hospital by his mother Diane Rose and defendant William Edward Miler. Jeffrey was unconscious and unresponsive, had bruises on his buttocks and a large bruise above his penis.

Shortly after the child was admitted to the hospital Dr. Pragas, a staff physician who had examined the child, told the nurse to report the matter to the police department. This was done. In the emergency room a "routine" sheet was filled out showing the name of the boy and his address. Lt. Hauswirth, the investigating officer,

arrived shortly thereafter and was given the information sheet.

Dr. Pragas talked to Lt. Hauswirth and showed him the child's injuries. Pictures of the child were taken. Lt. Hauswirth interviewed Diane Rose who told him of defendant's actions in striking the child. Lt. Hauswirth returned to the station and reported to the county attorney. At approximately 10:00 p. m. on the same day preliminary information was filed charging defendant with assault with intent to inflict bodily injury and a warrant for his arrest was issued. Jeffrey Rose died April 13, 1969 at Iowa City where he had been taken by ambulance. A preliminary information was filed charging defendant with murder. At the preliminary hearing on April 17, 1969 Diane Rose testified for the State. The defendant and Diane Rose were married on July 12, 1969 and are now husband and wife.

No oral or written reports of the above incidents were made to the welfare agency as required by statute. The county attorney received no written communications other than copies of the police reports.

I. The trial court considered the motion to suppress from three aspects. The first two are concerned with the inherent applicability of Iowa Code, 1971, § 622.7 which concerns itself with the interspousal testimonial privilege.[1]

Is this a crime "committed one against the other" and thus within the exception? The trial court decided the action here would be within the exception if the parties were married to each other at the time of the crime or other overt action.

However the court further held, on authority of State v. McKay, 122 Iowa 658, 98 N.W. 510 (1904), that the exception was ineffective where the parties were not married at the time the overt act was committed but subsequently married. We need

not and do not decide either of these questions because of the effect of chapter 235A of the Code considered infra.

II. Chapter 235A contains section 235A.8:

"*Evidence not privileged or excluded.* Sections 622.7, 622.9 and 622.10 and any other statute or rule of evidence which excludes or makes privileged the testimony of a husband or wife against the other or the testimony of a health practitioner as to confidental communications, shall not apply to evidence regarding a child's injuries or the cause thereof in any judicial proceeding, civil or criminal, resulting from a report pursuant to this chapter or relating to the subject matter of such report."

The central question in this appeal is whether section 235A.8 makes interspousal privilege inapplicable in this case. We think it does. Section 235A.1 states the policy of the act is to provide for the protection of children who have been physically abused and who may be in danger of further abuse. The section adds: "This chapter shall be administered and interpreted to provide the greatest possible protection as promptly as possible for such children."

Sections 235A.3 and 235A.4 provide for reports. These sections provide for several kinds of reports.

(1). A health practitioner, when not acting as a member of the staff of a hospital shall make an oral report to the county department of social welfare and a written report to the same department and the county attorney.

(2). A health practitioner, when acting as a member of a hospital or similar institution shall make a report to person in charge of the institution who shall report as provided in (1).

---

1. "*Husband or wife as witness.* Neither the husband nor wife shall in any case be a witness against the other, except:

"1. In a criminal prosecution for a crime committed one against the other, or" (Subsections 2, 3 and 4 are not applicable here).

(3). Any other person who believes that a child has had physical injury inflicted upon him as a result of abuse or neglect may make a report as provided in section 235A.4. That section also provides in some detail as to the contents of the reports. The concluding paragraph reads:

"A report made by anyone other than a health practitioner, hospital, or similar institution may be oral, written, or both; shall be regarded as a report pursuant to this chapter whether or not the report contains all of the information required by this section; and may be made to any county department of social welfare, county attorney, or law enforcement agency. If the report is made to any agency other than the county department of social welfare, such agency shall promptly refer the report to the county department of social welfare."

This latter paragraph contemplates another classification of reports; i. e., reports made to the county department of social welfare *and* reports made to law enforcement agencies.

We return to the interpretation of the words "shall not apply to evidence regarding a child's injuries or the cause thereof in any judicial proceeding, civil or criminal, *resulting from a report pursuant to this chapter or relating to the subject matter of such report*." (Emphasis supplied).

Mr. Miler's attorneys take the position that "a report" refers only to the formal report (oral or written) made to the social welfare department. Since no report was made to the social welfare department and no action taken by it for the future protection of the child, the exclusion in section 235A.8 does not apply. In essence the trial court agreed. We interpret the statute more broadly.

■ *Anyone* can make a report, it need not contain *all* necessary information and it may be made to any social welfare department, the county attorney *or* law enforcement agency. The definition of re-

port for the purpose of this chapter is thus given the broadest possible meaning. As we have often said, "The legislature is its own lexicographer." Cedar Mem. Park Cem. Ass'n. v. Personnel Assoc., Inc., 178 N.W.2d 343, 346 (Iowa 1970).

■ The nurse who called the police was not a health practitioner. We need not determine whether the doctor's report, which was different from the report he was required to make as a health practitioner, would also qualify as a report that anyone can make. The nurse's report to the police was within the definition of a report "by anyone other than a health practitioner * * * to a law enforcement agency." The interspousal privilege found in sections 622.7, 622.9 and 622.10 do not apply to this criminal procedure which resulted from or is related to the subject matter of the report.

It is said that such an interpretation would abrogate the interspousal immunity in practically all cases involving a crime against a child under the age of 18 years when the nurse reports to the police. We find this to be what the legislature intended. The legislation is for the protection of children. The detailed provisions for reports to the social welfare department undoubtedly show a legislative intent to have the department in the case notified at the earliest possible moment so the welfare of the children can be protected. Criminal laws also have protective value. The last paragraph of section 235A.4 is not limited to reports to social welfare departments. It is broadened to specifically include law enforcement agencies.

We think this view is consistent with the view adopted by scholarly authority. Cf. Rule 5–05(b), Preliminary Draft of Proposed Rules of Evidence for the United States District Courts and Magistrates, 46 F.R.D. 161, 263 (1969); more recently revised, March 15, 1971 and reported in 51 F.R.D. 315, 369 (1971); 8 Wigmore, Evidence § 2239 (McNaughton rev. 1961). It is also consistent with the general direction

of this court's interpretation of section 622.7. Cf. Peters v. District Court of Iowa, Linn Co., 183 N.W.2d 209 (1971), and is consistent with the views of other appellate courts. Cf. State v. Kollenborn, 304 S.W. 2d 855 (Mo.1957).

We therefore hold the trial court was in error in suppressing the wife's testimony in connection with the operative relevant facts of this case. The writ of certiorari is granted and the matter is returned to the district court for trial on evidentiary rulings consistent with this opinion.—Writ sustained.

All Justice concur, except REYNOLD-SON, J., who takes no part.