**STATE of Iowa, Appellee,**

v.

**Mark Allan ANDERSON, Appellant.**

**No. 00-1081.**

Supreme Court of Iowa.

Nov. 15, 2001.

Lawrence F. Scalise, Jennifer Jaskolka-Brown, and Jill Mataya-Corry of Sullivan & Ward, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Mary E. Tabor and Virginia Barchman, Assistant Attorneys General, and John E. Schroeder, County Attorney, for appellee.

CADY, Justice.

The primary issue we face in this appeal is whether the child abuse exception to the marital communications privilege applies to testimony presented in a criminal trial charging statutory rape by a person not responsible for the care of the child-victim. We conclude the district court erred in admitting evidence of marital communications under the facts of this case. We reverse the judgment and sentence of the district court, and remand the case for a new trial.

## I. Background Facts and Proceedings.

The circumstances leading to this criminal prosecution date back to the summer of 1998. At that time, Mark Anderson lived in Keota, Iowa, with his wife and two children. Anderson was a life-long resident of Keota and farmed with his father on the family farm located four miles north of the town. Anderson grew corn and beans on the farm, and raised hogs. He was also a girls' softball and basketball coach for the Keota Community School District. He was thirty-seven years old.

In July of 1998, Anderson hired a fifteen-year-old girl, whom we identify as J.D., to help work on the farm. J.D. had just completed the eighth grade and was a schoolmate of Anderson's children. Anderson had known J.D.'s parents for many years. J.D. and her parents also lived in Keota. J.D.'s parents eventually made J.D. quit her employment with Anderson after they began to feel uncomfortable with the amount of time the two were spending together.

A year later, on September 14, 1999, the principal of the Keota high school notified J.D.'s parents of a report he received that Anderson had engaged in inappropriate contact with J.D. during the summer and fall of 1998. The parents then confronted J.D., who admitted to the report.

On September 15, 1999, J.D. and her mother met with a deputy county sheriff. J.D. gave a detailed statement disclosing four separate occasions in which she engaged in sexual intercourse with Anderson during the summer and fall of 1998. A criminal complaint was then filed on the same date, and the county attorney filed two trial informations against Anderson for sexual abuse in the third degree under Iowa Code section 709.4(2)(c)(4) (1997), commonly known as statutory rape.

On September 17, 1999, the school principal also called J.D. into his office at the school, and asked her to fill out a written report or complaint of abuse of a student by a school employee. The principal did this as a designated abuse investigator for the school district, and J.D. complied with the request. She was subsequently interviewed by the child protective service agency in Cedar Rapids. During the interview, J.D. again described the incidents of sexual intercourse with Anderson.

The trial information was later amended to charge Anderson with two counts of sexual abuse in the third degree, based solely on the commission of a sex act with a minor and the disparity in the age of the participants. Trial commenced on May 2, 2000.

J.D. testified at trial that Anderson first made sexual advances towards her on the evening of July 4, 1998. This occasion was followed by another incident of more aggressive sexual advances a few days later after J.D. had accompanied Anderson to his camper parked at Lake Darling. She then described four occasions in which she engaged in sexual intercourse with Anderson. She testified she had sexual intercourse with Anderson on two occasions in the camper, once in the bedroom of Anderson's home, and once in a schoolroom of the elementary school in Keota. J.D. was able to describe the interior of the camper and bedroom in detail, and described Anderson as having a hairy chest.

The State also called Anderson's ex-wife as a witness at trial. She testified that their seventeen-year marriage ended in divorce on December 20, 1999, four months prior to the trial. She described the interior of the camper and the bedroom, as well as Anderson's body, consistent with the description given by J.D. She also testified to various conversations she had with Anderson about his relationship with J.D., including concerns she expressed to him during the summer of 1998 about the amount of time he was spending with J.D. She also testified to a private conversation she had with Anderson following his arrest in which she asked him why he "let himself get into that situation." In response, Anderson told her "You're right. I should have listened to you before."

Anderson testified at trial and acknowledged J.D. visited the camper with him, and accompanied him on numerous occasions to various places during the time

period she worked for him. However, he denied engaging in any sexual intercourse with her or that any inappropriate behavior occurred. Anderson also acknowledged the comment made to his ex-wife, but testified he was talking about his poor judgment in allowing himself to be placed in the position of being accused of the crime. Anderson also called several witnesses at trial who testified they never observed any inappropriate conduct between Anderson and J.D., including a witness who observed them in the camper on one occasion.

Anderson requested the jury be permitted to consider the offenses of assault with intent to commit sexual abuse and simple assault as lesser-included offenses of the charge of sexual abuse in the third degree. The district court refused to submit the offenses.

The jury found Anderson guilty of both counts of sexual abuse in the third degree. Anderson was subsequently sentenced to two concurrent ten-year terms of incarceration. He appeals.

Anderson raises two issues on appeal. First, he claims the district court erred in allowing his former wife to testify about their privileged marital communications. Second, he claims the district court erred in refusing to submit the offenses of assault and assault with intent to inflict sexual abuse as lesser-included offenses of sexual abuse in the third degree.

## II. Standard of Review.

Our standard of review of the statutory privilege is for correction of errors at law. Iowa R. App. P. 4; *State v. Richmond*, 590 N.W.2d 33, 34 (Iowa 1999). Our standard of review for the admissibility of evidence alleged to be privileged is for an abuse of discretion. *Richmond*, 590

N.W.2d at 34; *State v. Alspach*, 524 N.W.2d 665, 668 (Iowa 1994). Our standard of review on issues of jury instructions is for errors at law. *State v. Rohm*, 609 N.W.2d 504, 509 (Iowa 2000).

## III. Marital Communications Privilege.

It is generally recognized that every person may be liable to testify to relevant factual matters in a court proceeding. *See* 8 John Henry Wigmore, *Evidence* § 2232, at 227-28 (McNaughton rev. 1961). However, our law has long recognized certain privileges to protect against the disclosure of specific types of communications. These privileges are ordinarily grounded in public policy and generally exist to promote certain confidential relationships and encourage candid communications between the parties to those relationships. 7 James A. Adams & Joseph P. Weeg, *Iowa Practice* § 501.1, at 273 (2d ed. 1998); *see* 8 Wigmore, *Evidence* § 2285, at 527-28. They exist because the societal interest protected by the privilege exceeds the value of the testimony to the administration of justice.

One recognized privilege involves confidential marital communications. Since medieval times, the law recognized a wife could not testify against her husband. *See Trammel v. United States*, 445 U.S. 40, 43–44, 100 S.Ct. 906, 909, 63 L.Ed.2d 186, 190 (1980). Although this ancient doctrine has been abrogated in Iowa, as well as in nearly all other jurisdictions, our laws still recognize a companion privilege that prohibits the disclosure of testimony concerning a spousal communication made during the marriage. *See* 1 Kenneth S. Broun et al., *McCormick on Evidence* § 78, at 292-94 (John William Strong ed., 4th ed. 1992); 7 Adams & Weeg, *Iowa*

Practice § 503.1, at 297.[1] *Like its ancient counterpart, this privilege largely exists to promote marital harmony and stability.*[2] See Stein v. Bowman, *13 Pet. 209, 38 U.S. 209, 223, 10 L.Ed. 129, 136 (1839)*; Sexton v. Sexton, *129 Iowa 487, 489, 105 N.W. 314, 315 (1905)*; 7 Adams & Weeg, Iowa Practice § 503.1, at 297. *Marriage has long been considered to be the traditional foundation of the family, and subject to legal protection.*

The privilege for marital communications is recognized in Iowa by statute. Iowa Code section 622.9 provides:

> Neither husband nor wife can be examined in any case as to any communication made by the one to the other while married, nor shall they, after the marriage relation ceases, be permitted to reveal in testimony any such communication made while the marriage subsisted.

The privilege, however, is not absolute. Both common law and legislative exceptions have surfaced under circumstances where the purpose for the privilege is diminished or lost. *See State v. Klindt*, 389 N.W.2d 670, 675–76 (Iowa 1986). We adopted a common law exception to the marital privilege in prosecutions for crimes committed by one spouse against the other.[3] *Id.* at 676. Moreover, our legislature crafted another exception to the marital privilege concerning evidence of injuries to children in a civil or a criminal proceeding that resulted from or related to a report of suspected child abuse.[4] Iowa Code § 232.74. It provides:

1. The rule of spousal disqualification can be traced to 1628 when Lord Coke wrote "it hath beene resolved by the Justices that a wife cannot be produced either against or for her husband." *Trammel*, 445 U.S. at 43-44, 100 S.Ct. at 909, 63 L.Ed.2d at 190 (quoting 1 E. Coke, *A Commentarie upon Littleton* 6b (1628)). Iowa repealed the competency statute, formerly Iowa Code section 622.7, in 1983. *See* 1983 Iowa Acts ch. 37, § 6 (codified at Iowa Code § 726.4 (1983)); *see also* 7 Adams & Weeg, *Iowa Practice* § 503.1, at 297 n.3. The statutory privilege against the disclosure of marital communications dates back to 1851. 7 Adams & Weeg, *Iowa Practice* § 503.1, at 297 n.1 (citing Iowa Code § 2392 (1851)).

2. Other reasons support the existence of the marital privilege. *See* 7 Adams & Weeg, *Iowa Practice* § 503.1, at 297 n.4. One additional reason is to respect human privacy, especially in the context of the marital relationship. *Id.* (citing 2 Louisell & Mueller, *Federal Evidence* § 219, at 637–38 (1978)). Another reason is that "it is unseemly, even offensive to many, to use the power of the state to force revelation of marital confidences." *Id.* (quoting 2 Louisell & Mueller, *Federal Evidence* § 219, at 637-38 (1978)). Additionally, "this protected privacy, and the confidence between spouses which it encourages, are utterly essential to the complete fulfillment of marriage." *Id.* The privilege "provides support for the institution of marriage itself—a proposition which is sound even if it be conceded that spouses do not consciously rely upon the privilege in confiding in one another." *Id.*

3. Many other jurisdictions, including federal courts, have established an exception to the marital privilege where a spouse commits an offense against the other spouse. *See Wyatt v. United States*, 362 U.S. 525, 526-27, 80 S.Ct. 901, 902-03, 4 L.Ed.2d 931, 933 (1960); 25 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5592, at 748 (1989) (it is generally agreed that assault, battery, and other types of corporal violence are within the exception).

4. In *State v. Countryman*, we specifically recognized child abuse and crimes against a spouse as the two exceptions to the marital communications privilege. *See State v. Countryman*, 572 N.W.2d 553, 561 (Iowa 1997). We created the latter exception, while the child abuse exception is strictly statutory. Additionally, section 726.4 recognizes what could be considered a third exception to the privilege. This section provides: "In all prosecutions under section 726.3, 726.5 or 726.6, the husband or wife is a competent witness for the [S]tate and may testify to relevant acts or communications between them." Iowa Code § 726.4. The excepted sections deal with neglect or abandonment of a dependent

Sections 622.9 and 622.10 and any other statute or rule of evidence which excludes or makes privileged the testimony of a husband or wife against the other or the testimony of a health practitioner or mental health professional as to confidential communications, do not apply to evidence regarding a child's injuries or the cause of the injuries in any judicial proceeding, civil or criminal, resulting from a report pursuant to this chapter or relating to the subject matter of such a report.

*Id.*

We have previously indicated this statute reveals our legislature's intention to abrogate the spousal privilege in most cases involving crimes against children under eighteen years of age. *State v. Cahill,* 186 N.W.2d 587, 589 (Iowa 1971). However, we have not yet considered the contours of those cases that may fall outside the child abuse exception. We first turn to the history and language of the statute to make this determination.

The statutory exception to the marital privilege was first enacted in 1965. *See* 1965 Iowa Acts ch. 217, § 8 (codified at Iowa Code § 235A.8 (1966)). It has been amended on two occasions since that time, but the substantive provisions have remained unchanged. *See* 1987 Iowa Acts ch. 153, § 6 (codified at Iowa Code § 232.74 (1989)) (added mental health professionals); 1983 Iowa Acts ch. 37, § 1 (codified at Iowa Code § 232.74 (1985)) (deleted reference to section 622.7). The statute establishes three central components to the exception to the marital privilege. First, the statutory exception applies "to evidence regarding a child's injuries or the cause of the injuries...." Iowa Code § 232.74. Second, the evidence must be presented in any civil or criminal "judicial proceeding." *Id.* Finally, the civil or criminal proceeding must "result[ ] from a report pursuant to this chapter or relat[e] to the subject matter of such a report." *Id.; see State v. Johnson,* 318 N.W.2d 417, 439 (Iowa 1982) ("When a report is made and a judicial proceeding either results from the report or relates to the subject matter of the report, section 232.74 prevents the application of any statutory or common-law marital privilege to the child's injuries or the cause of them.").

This case does not implicate the first two requirements. An alleged admission of statutory rape constitutes evidence of an injury to a child-victim or the cause of injury, and the evidence in dispute in this case was presented in a criminal trial. We focus our attention on the third requirement. The exception to the marital privilege not only requires a report to be made, but further requires the report to be made "pursuant to this chapter" or relate to the subject matter of such a report. Iowa Code § 232.74. Clearly, the scope of the exception is defined by the reporting provisions under the governing chapter of the Code. *See Johnson,* 318 N.W.2d at 439 (section 232.74 is found in the division of the Juvenile Justice Act "relating to child abuse reporting, investigat[ion], and rehabilitat[ion]").

Anderson argues the statutory exception does not apply to this case because the criminal charges brought against him by the State do not constitute child abuse and were not subject to the child abuse reporting provisions of chapter 232. The State argues the exception applies because the reporting provisions of the law are broad

person, nonsupport, and child endangerment, and are closely related to the child abuse exception.

enough to include all crimes against children, and, notwithstanding, the criminal charges brought against Anderson were within the statutory reporting requirements of a mandatory reporter. The State asserts the report made by the school principal in this case satisfied the third requirement of the statutory exception.

Before examining the specific reporting requirements under the chapter, it is important to consider that section 232.74 was first enacted as part of a separate chapter of the Code entitled "Abuse of children." *See* Iowa Code ch. 235A (1966). This chapter was primarily devoted to the reporting and investigation of abused and neglected children, but also established the exception to the marital privilege. *See id.* § 235A.8. Thus, "a report pursuant to this chapter" originally referred to reporting provisions of the chapter on abuse of children. The chapter required a health practitioner to report suspected abuse or neglect of a child and permitted "[a]ny other person who believe[d] that a child has had a physical injury inflicted upon him as a result of abuse or neglect [to] make a report...." *Id.* § 235A.3. Thus, all reports made by a mandatory reporter could also be filed by a permissive reporter. *See id.*

In 1979, our legislature enacted the comprehensive Juvenile Justice Act. *See* Iowa Code ch. 232 (1979). At the same time, the reporting, investigation, and exception to the marital privilege provisions were transferred to this comprehensive chapter of the Code, *see id.* § 232.74, and the present reporting and investigation scheme evolved by various amendments to the statute. The provisions are now contained within a separate division of the act entitled "Child Abuse Reporting, Assessment, and Rehabilitation." *See id.* §§ 232.67–77 (1997).

Today, as before, any person may report child abuse under chapter 232. Iowa Code § 232.69(2).(Supp.1997). Furthermore, our legislature has continued to distinguish between mandatory and permissive reporters. However, mandatory reporters have expanded from health care practitioners to include a comprehensive class of persons who examine, attend, counsel, or treat a child in the scope of their practice or employment and reasonably believe the child has suffered abuse. *Id.* § 232.69(1)(a), (b). They are required to report the abuse. *Id.* A licensed school employee, as well as a peace officer, is now included within the list of mandatory reporters. *Id.* § 232.69(1)(b)(6), (13). Permissive reporters continue to be defined as "[a]ny other person who believes that a child has been abused." *Id.* § 232.69(2). They may make a report of the child abuse. *Id.* Yet, our legislature continues to recognize that the reports subject to reporting refer to reports of child abuse or reports of children who are believed to have been abused. *Id.* § 232.69(1), (2).

■ Under section 232.68(2), "child abuse" or "abuse" is defined six ways. However, each definition not only describes some form of harm to a child, but also requires the harm to result from the acts or omissions of a person responsible for the care of the child.[5] *See id.*

---

5. A "person responsible for the care of a child" is a defined term. *See* Iowa Code § 232.68(7). It means:

  *a.* A parent, guardian, or foster parent.

  *b.* A relative or any other person with whom the child resides and who assumes care or supervision of the child, without reference to the length of time or continuity of such residence.

  *c.* An employee or agent of any public or private facility providing care for a child, including an institution, hospital, health care facility, group home, mental health center, residential treatment center, shelter

§ 232.68(2)(a)-(f). Thus, although "[t]he commission of a sexual offense with or to a child," for example, comprises one of the definitions of "child abuse" or "abuse," the definition also requires the offense to be committed "as a result of the acts or omissions of the person responsible for the care of the child." *Id.* § 232.68(2)(c). If the sexual abuse is committed as a result of the acts of a non-care provider, it is outside the definition of "child abuse" or "abuse" for purposes of the reporting provisions under chapter 232. Thus, these definitions instruct us that child abuse does *not* include injuries perpetrated against children by non-care providers. This is consistent with the traditional notion of what constitutes child abuse. *See State ex rel. Wiley v. Richards,* 253 Iowa 679, 680, 113 N.W.2d 285, 286 (1962) (purpose of juvenile code relates to care, custody, and discipline that parents should provide to children).

Although chapter 232 generally limits its reporting requirements to child abuse, mandatory reporters are also now given additional reporting requirements under section 232.69 that were not present when the reporting requirements and the exception to the marital privilege were first enacted. Section 232.69(1) was recently amended to require mandatory reporters to report sexual offenses against a child who is under twelve years of age involving abuse, incest, and exploitation, as well as prostitution, which would otherwise constitute child abuse except "the abuse resulted from the acts or omissions of a person other than a person responsible for the care of the child." *Id.* § 232.69(1). Additionally, a mandatory reporter may report

such sexual offenses against a child who is twelve years of age or older when the abuse occurred by a non-care provider. *Id.* Thus, even though a sexual offense committed as a result of the acts of a person other than the person responsible for the care of the child falls outside the definition of child abuse for reporting purposes, our legislature made it reportable by designated mandatory reporters. Yet, the reporting provisions relating to permissive reporters continue to be limited to cases of child abuse. *See id.* § 232.70(7).

Thus, unlike the original reporting provisions, chapter 232 has extended the reporting scheme for mandatory reporters to include some cases of non-child abuse, but has continued to limit the reporting provisions for permissive reporters to child abuse. The important consequence of this distinction comes into play when the reporting requirements are applied to the exception to the marital privilege. If we apply the literal language of section 232.74 to the present reporting scheme under section 232.69, it would mean that the exception to the privilege would apply to cases involving sex offenses against children *not constituting child abuse,* such as the crime of statutory rape, depending upon who filed the report. If the report was made by a mandatory reporter, the exception would apply. If it was made by a permissive reporter, the exception would not apply. This is the interpretation sought by the State in this case. It correctly points out that the school principal was a mandatory reporter, and claims that the report of the sexual offense made by the principal constituted a report under chapter 232.[6]

care facility, detention center, or child care facility.

*d.* Any person providing care for a child, but with whom the child does not reside,

without reference to the duration of the care.

*Id.*

6. There was no evidence produced at trial to show the school principal actually made a

In ascertaining the intent of our legislature, we seek to give statutes a sensible, practical, workable, and logical construction. *Wilkins v. State*, 522 N.W.2d 822, 823 (Iowa 1994). We attempt to find a reasonable construction that "serve[s] the purpose of the statute and avoid[s] absurd results." *Sourbier v. State*, 498 N.W.2d 720, 723 (Iowa 1993). Clearly, the manifest intent of our legislature prevails over the literal import of the words used. *Gen. Elec. Co. v. Iowa State Bd. of Tax Review*, 492 N.W.2d 417, 420 (Iowa 1992).

We understand why our legislature would want to expand the reporting requirements in the area of sexual offenses against children. The policy and purpose of reporting requirements is to protect children from abuse as much as possible. Iowa Code § 232.67 (1997). Furthermore, it is even understandable why our legislature would want to extend the marital privilege exception to include proceedings involving sexual offenses against children that fall outside the definition of child abuse.[7] However, we cannot conceive of any rationale for making the expanded exception hinge solely upon the mandatory or permissive nature of the report. Such a distinction has no relationship to abrogating or limiting the marital privilege. The

considerations involved in protecting the welfare of children by expanding the reporting and investigation of abuse to children are not necessarily the same as the prosecution of abuse to children. If our legislature had intended to expand the exception to the marital privilege by expanding the reporting requirements, it would not have done so by limiting the expansion to mandatory reporters.

We think our legislature only intended the exception to the marital privilege under section 232.74 to apply to cases resulting from reports of child abuse despite the new provisions of the Code that both permit and compel mandatory reporters to report sexual offenses against children that do not constitute child abuse. This conclusion is not only supported by the illogical distinction created by a literal application of the language of section 232.74 to the reporting requirements of section 232.69, but it is consistent with other principles of statutory construction.

Statutes creating privileges are to be liberally construed. *State v. Bedel*, 193 N.W.2d 121, 124 (Iowa 1971). They are founded on longstanding principles representing strong prevailing public policy. Thus, any exceptions to a privi-

---

report to the Department of Human Services (DHS). However, the record reflects that a deputy sheriff took J.D. to Child Protective Services for an examination and interview. Although we are not required to decide the question, this evidence may constitute an oral report to the DHS under section 232.70.

7. Although the justification for abrogating the marital privilege in cases involving family members does not apply with the same force to cases not involving the same family, there are other reasons for abrogating the marital privilege in child abuse cases that would apply whether or not the abuse occurred within the family. The policy which helps justify the marital privilege relates not only to the sanctity of the relationship and nature of the communications between spouses, but also con-

siders whether the injury that would inure to the marital relationship by permitting disclosure is greater than the benefit that would result from the judicial pursuit of the truth. *See* 8 Wigmore, *Evidence* § 2285, at 527. Thus, an exception to the marital privilege in cases of child abuse can be justified by the general need for evidence to assist in the prosecution of such cases. *United States v. Allery*, 526 F.2d 1362, 1366 (8th Cir.1975). The marital privilege is criticized because it impedes justice by excluding even reliable evidence. *See id.* Our legislature certainly could consider this delicate balancing process in extending the exception to some cases of child sexual offenses not involving family members or care providers.

lege, in light of the predominate purposes behind the existence of privileges, would normally be narrowly construed.

We also recognize that the fundamental purpose of maintaining the marital privilege is served in cases involving injuries to children as a result of a non-care provider with much greater strength than in cases involving a care provider. Like the exception for crimes by one spouse against the other, child abuse inflicted by a spouse upon a child of the family undermines the very relationship the privilege seeks to maintain. *United States v. Allery*, 526 F.2d 1362, 1366 (8th Cir.1975). It is an offense against the family harmony and, at the same time, a wrong against the other spouse. *Id.* These consequences gave rise to the creation of the recognized exceptions to the privilege. On the other hand, the marital relationship is not directly undermined by acts of a spouse directed to a child outside the marriage relationship.

We further recognize that a limitation on the exception to the marital privilege to cases that fall within the statutory definition of child abuse is compatible to the approach followed in most jurisdictions that have enacted a child abuse exception to the marital privilege. The three federal circuits that have adopted the child abuse exception to the marital privilege did so only in cases where the victim of the offense was a child of one of the spouses, or was at least a child within the household. *See United States v. Bahe*, 128 F.3d 1440, 1446 (10th Cir.1997); *United States v. White*, 974 F.2d 1135, 1138 (9th Cir.1992); *Allery*, 526 F.2d at 1367. Furthermore, most states that have adopted the child abuse exception to the marital privilege appear to have narrowly applied the exception to crimes against children of either spouse or children under their care. *See Commonwealth v. Boarman*, 610 S.W.2d 922, 925 (Ky.Ct.App.1980) (marital privi-

lege not applicable to the prosecution of a man for sexual abuse of adopted daughter); *Adams v. State*, 563 S.W.2d 804, 809 (Tenn.Crim.App.1978) (marital privilege does not apply to acts of violence by a defendant upon the children of either spouse or upon minor children in the custody or dominion or control of either spouse); *State v. Widdison*, 4 P.3d 100, 111–12 (Utah Ct.App.2000) (exception to marital privilege applies to injuries by husband to a child residing in home of either spouse); *State v. Sanders*, 66 Wash.App. 878, 883–84, 833 P.2d 452, 455–56 (1992) (under state statute, the marital privilege does not apply to crimes committed by a husband or wife against any child of whom the husband or wife is a parent or guardian). *But see Ludwig v. State*, 931 S.W.2d 239, 244 (Tex.Crim.App.1996) (interpreting rule to extend exception to marital privilege to any crime against any child).

Finally, the statutory history of section 232.74 reveals our legislature could not have intended to expand the child abuse exception to the marital privilege when it expanded the reporting requirements for mandatory reporters to include two specific incidences of injuries to children not involving child abuse. This interpretation could not reflect the intention of our legislature because it creates the absurd result of making the designated status of the reporter determine the admissibility of privileged communications at trial. Instead, we think the original intent of our legislature to limit the scope of the exception to the marital privilege to cases involving the acts or omissions of a care provider continues to apply today, and the expanded requirements for mandatory reporters were only intended to provide greater protection to children through the reporting and investigation of abuse. Thus, we conclude the exception to the marital privilege under section 232.74 is limited to cases of child abuse that result

from acts or omissions of a care provider. It does not apply to injuries to children that result from acts or omissions by a non-care provider.

The State also asserts the statutory exception to the marital privilege should be read to apply to any reports of injuries to children. We have said on prior occasions that our legislature intended a "report" to be broadly defined. *State v. Spaulding*, 313 N.W.2d 878, 880 (Iowa 1981); *Cahill*, 186 N.W.2d at 589. Yet, this broad definition essentially means all child abuse that leads to a judicial proceeding will necessarily be preceded by a report under chapter 232, or at least relate to the subject matter of the report. *See Johnson*, 318 N.W.2d at 439 ("[a]lthough the [criminal] proceedings did not *result from* the report, they clearly *relate to* the subject matter of the report"). It means the legislature did not intend the reporting requirements to be technical, and that most reports of child abuse will constitute a report under the chapter. However, the broad meaning of "report" cannot be extended beyond the meaning intended by our legislature.

The State's position would require us to read the "report pursuant to this chapter" language out of the statute. We avoid interpreting a statute to render any part of it superfluous. *State v. Graves*, 491 N.W.2d 780, 782 (Iowa 1992). Instead, each part of the statute is presumed to have a purpose. *Id.* We cannot interpret section 232.74 to include reports that are not a part of the reporting provisions of section 232.69. Our legislature intended to qualify "reports" to refer to reports of child abuse.

### IV. Harmless Error.

The State further argues that any error in admitting evidence in violation of the marital privilege did not affect the outcome of the trial. We recognize not all trial error requires a reviewing court to reverse the judgment of the district court. Instead, under the harmless error rule, reversal is not required if the State can establish the error did not cause prejudice to the defendant. *State v. Griffin*, 576 N.W.2d 594, 597 (Iowa 1998). The inquiry turns to whether the guilty verdict was unattributable to the error. *See State v. Leutfaimany*, 585 N.W.2d 200, 206 (Iowa 1998). In making this determination, we consider the probative force of the evidence considered by the jury against the evidence erroneously admitted. *Id.*

The State asserts the evidence of guilt was strong enough to support a verdict of guilty without the evidence of the implied admission of guilt by Anderson. Furthermore, the State maintains that Anderson offered an explanation in response to the evidence of an admission that would support a finding that the evidence did not constitute an admission. We agree the child-victim in this case offered detailed evidence of the crime, which was corroborated by Anderson's former wife. Anderson was also alone with the child on numerous occasions and the child did not accuse Anderson until she was confronted by her parents and authorities almost a year later.

Nevertheless, there was no physical evidence offered at trial and no eye witness testimony to the crime. Instead, the verdict was essentially a product of the credibility of the defendant and the victim. Anderson offered evidence to rebut the testimony offered by the State. Under these circumstances, we cannot conclude beyond a reasonable doubt the guilty verdict was unattributable to the evidence admitted in violation of the marital privilege. In a case of this nature, an admission of guilt could have very well been the decisive piece of evidence that tipped the scale in favor of guilt. Moreover,

Anderson's explanation for the implied admission was not so strong that it would have eliminated any impact on the jury.

We are obligated under our governing principles of law to reverse the conviction. The admission of the evidence of the marital communications was prejudicial to Anderson in this case.

### V. Lesser-Included Offenses.

We address Anderson's additional argument that the conviction must be reversed because the district court failed to instruct the jury on all the lesser-included offenses of the crime. Anderson claims he was entitled to the lesser-included offenses of assault with intent to commit sexual abuse and simple assault. We address this issue to assist the trial court in the event it is presented again on remand.

Generally, a district court commits reversible error by failing to instruct the jury on all lesser-included offenses. A lesser-included offense is included in the greater offense "if it is impossible to commit the greater offense without also committing the lesser offense." *State v. Jeffries*, 430 N.W.2d 728, 740 (Iowa 1988).

Anderson claims we have previously determined that assault and assault with intent to commit sexual abuse are lesser-included offenses of sexual abuse in the third degree, even in cases involving children. *See State v. Wilson*, 523 N.W.2d 440, 440–41 (Iowa 1994); *State v. Turecek*, 456 N.W.2d 219, 222–23 (Iowa 1990). However, our prior cases involved specific allegations of sexual abuse by force or acts against the will of the victim. In this case, the State only charged Anderson with the statutory rape alternative of sexual abuse in the third degree. *See* Iowa Code § 709.4(2)(c)(4). Thus, force or consent was not an issue, which excludes any lesser-included offenses based on assault. *See State v. Constable*, 505 N.W.2d 473, 476–77

(Iowa 1993) (simple assault and assault with intent to commit sexual abuse are not lesser-included offenses of sexual abuse when the sex act is not charged under the alternative of force or against the will of the victim).

Nevertheless, Anderson argues that evidence was presented at trial to support a finding by the jury that J.D. did not consent to the sex acts. He also made an offer of proof concerning J.D.'s unwillingness to submit to Anderson's advances. This evidence, however, is not material to the proceeding, and cannot be used to alter the State's theory of prosecution. The district court properly denied the request for lesser-included offenses.

### VI. Conclusion.

We conclude the trial court erred in admitting evidence of marital communications. We find the error was prejudicial. Consequently, we are obligated to reverse the judgment and sentence of the district court and remand the case for a new trial.

**REVERSED AND REMANDED FOR A NEW TRIAL.**