IN THE SUPREME COURT OF IOWA

 No. 134 / 04-0677

 Filed March 10, 2006

JULIE M. BOYLE,

 Appellant,

vs.

ALUM-LINE, INC.,

 Appellee.

________________________________________________________________________
 On review from the Iowa Court of Appeals.

 Appeal from the Iowa District Court for Howard County, John
Bauercamper, Judge.

 Plaintiff appeals adverse verdicts in her sexual discrimination and
retaliatory discharge claims. DECISION OF COURT OF APPEALS VACATED;
DISTRICT COURT JUDGMENT Reversed and Remanded with instructions for Further
Proceedings.

 Karl G. Knudson of Knudson Law Office, Decorah, Mark B. Anderson,
Cresco, and James P. Moriarty of Moriarty Law Offices, P.C., Cresco, for
appellant.

 Donald H. Gloe of Miller, Pearson, Gloe, Burns, Beatty, Cowie &
Shidler, P.L.C., Decorah, for appellee.

STREIT, Justice.
 A welder claims she was sexually harassed by her fellow workers who
could not get past her gender. Julie Boyle appeals the adverse verdicts in
her sexual discrimination and retaliatory discharge claims brought under
federal and state civil rights acts. Boyle contends the district court
erred in three ways: (1) by denying her Iowa Civil Rights Act (ICRA)
hostile-work-environment claim for sexual harassment in the workplace
without determining and applying the proper standard of proof, (2) by
improperly instructing the jury on the effect her “at-will” employment had
on her employer’s ability to terminate her employment, and (3) by denying
her ICRA claim for retaliatory discharge without making any factual
findings. Because we find there was not substantial evidence to support
the trial court’s decision regarding the ICRA hostile-work-environment
claim, the jury instruction was improper, and the court failed to apply a
correct legal analysis to the retaliatory discharge claim, we reverse and
remand with instructions for further proceedings.
 I. Facts and Prior Proceedings
 Alum-Line, Inc. hired Boyle in August of 2001 to work as a welder.
Alum-Line is an Iowa corporation with three plants engaged in the
manufacture of trailers and related items. Boyle worked briefly at one
plant, but was transferred two months later to a different plant. Boyle
was the only female worker in the second plant. Her foreman’s name was
Wayne Hansmeier. Hansmeier was supervised by the plant manager, Chris Orr.
 Boyle and Hansmeier worked on the production floor, while Orr worked in an
office overlooking the production floor. Orr’s supervisor was Gary Gooder,
the president of Alum-Line.
 Boyle claims she was subjected to numerous incidences of sexual
harassment while working at this plant. She claims she was routinely
subjected to pornographic and demeaning images of women—some of which
depicted women performing sexual acts with beer cans and animals. Many
times, when she laid on her back to work underneath a trailer, one coworker
would yell comments about her being in a “promotable position.” Also, a
fellow coworker once shined a flashlight on her chest and said “I can warm
those for you.” Boyle claims she reported the flashlight incident to Orr,
but he declined to do anything about it. Boyle again complained to Orr
when Hansmeier responded to a question from Boyle with harsh profanity.
Orr responded to this complaint by reprimanding both Hansmeier and Boyle.
Weeks later, Boyle claims she went to Gooder to complain after a coworker
put his hand down her blouse. Gooder allegedly sent her to Orr. Boyle
claims Orr’s only response to her complaint was “We’ve had some complaints
and I’m investigating.” Gooder and Orr claim Boyle never made any
complaints about sexual harassment. The only complaint they acknowledge
pertained to the incident involving harsh language.
 On April 23, 2002, approximately one week after Boyle allegedly
complained about her coworker putting his hand down her blouse, Gooder and
Orr told Boyle her employment was terminated. Gooder and Orr said she was
terminated because her coworkers had complained they were uncomfortable
working with her because she was sexually harassing them.
 In 2003, Boyle filed a petition seeking damages under the ICRA and
under Title VII of the Civil Rights Act of 1964. The petition contained
four distinct claims: (1) sexual discrimination through a hostile work
environment under the ICRA, (2) retaliatory discharge under the ICRA, (3)
sexual discrimination through a hostile work environment under Title VII,
and (4) retaliatory discharge under Title VII. Pursuant to the law at the
time of the case, the federal claims were tried to a jury while the state
claims were simultaneously tried to the district court. See Smith v. ADM
Feed Corp., 456 N.W.2d 378, 380 (Iowa 1990) (holding there is no right to a
jury trial under the ICRA), overruled by McElroy v. State, 703 N.W.2d 385
(Iowa 2005).
 Boyle proposed a retaliatory discharge jury instruction, but the
court ultimately did not instruct the jury on this issue. Boyle did not
object to the court omitting the instruction. However, Boyle did object to
the court’s jury instruction which stated Alum-Line had the right to
discharge Boyle “for any reason.” The court overruled this objection and
gave the instruction to the jury.
 In a special verdict, the jury concluded there was a hostile work
environment, but also determined Alum-Line took steps reasonably calculated
to stop the sexual harassment. Based on this finding, the district court
entered judgment for Alum-Line on the Title VII hostile-work-environment
claim. The court made identical findings of fact and entered judgment
denying Boyle’s ICRA hostile-work-environment claim. The court pointedly
refrained from making any findings as to her ICRA retaliatory discharge
claim. Not having been instructed on such a claim, the jury did not make
any findings on the Title VII retaliatory discharge claim.
 Boyle filed post-trial motions requesting, among other things, the
court amend its decision on the Iowa Civil Rights Act claim to find Alum-
Line did not take steps reasonably calculated to end the sexual harassment,
and Alum-Line discharged the plaintiff in retaliation for lodging her last
complaint of sexual harassment.
 The district court denied all of Boyle’s motions and stated its
“findings of fact are supported by substantial evidence in the record and
are consistent with the jury’s factual findings [on the federal claim].”
 Boyle filed an appeal contending the district court erred in three
ways. First, it erred in denying her ICRA hostile-work-environment claim
without determining and applying the proper standard of proof.[1] Second,
it erred in instructing the jury on the effect her at-will employment had
on Alum-Line’s ability to terminate her employment. Third, it erred by not
making any factual findings when it denied her ICRA claim for retaliatory
discharge.
 The court of appeals reversed and remanded to the district court for
retrial solely on Boyle’s Title VII claim of sexual discrimination through
a hostile work environment. It affirmed the judgment of the district court
on all other issues. We granted further review.
 II. The Merits
 A. Iowa Civil Rights Act Hostile-Work-Environment Claim
 In Farmland Foods v. Dubuque Human Rights Commission, we set forth the
elements of an ICRA hostile-work-environment claim:

 To establish a hostile work environment, the plaintiff must show: (1)
 he or she belongs to a protected group; (2) he or she was subjected to
 unwelcome harassment; (3) the harassment was based on a protected
 characteristic; and (4) the harassment affected a term, condition, or
 privilege of employment. Additionally, if the harassment is
 perpetrated by a nonsupervisory employee, the plaintiff must show the
 employer knew or should have known of the harassment and failed to
 take proper remedial action.

672 N.W.2d 733, 744 (Iowa 2003) (internal quotations and citations
omitted). The district court entered findings of fact which established
that Boyle was subjected to a hostile work environment. The court
determined:

 [Boyle] was subjected to sexual harassment by her co-worker’s
 offensive sexual language and conduct at work. . . . The conduct by
 [Boyle’s] co-workers was based on her gender. . . . The conduct by
 [Boyle’s] co-workers was directed to [Boyle] and was unwelcome and
 uninvited. . . . The conduct was sufficiently severe or pervasive so
 that a reasonable person would find [Boyle’s] work environment to be
 hostile. . . . [Alum-Line] knew of the sexual harassment. . . .

However, the court found Boyle failed to prove all of the elements of a
claim for sexual harassment in the workplace because Alum-Line “did take
steps reasonably calculated to stop the sexual harassment.” Boyle argues
there was insufficient evidence to support the finding that Alum-Line took
steps reasonably calculated to stop the sexual harassment.
 Our review of claims tried to the district court under the ICRA is for
correction of errors at law. Falczynski v. Amoco Oil Co., 533 N.W.2d 226,
230 (Iowa 1995) (“Our review of discrimination claims tried to the court is
at law.”). The district court’s findings of fact are entitled to the
weight of a special verdict and are binding on appeal if supported by
substantial evidence. Lynch v. City of Des Moines, 454 N.W.2d 827, 829
(Iowa 1990). If there is no substantial evidence to support a finding upon
which the lower court arrives at a challenged conclusion of law, the
finding is not binding on this court. Offermann v. Dickinson, 175 N.W.2d
423, 426 (Iowa 1970).
 Before we analyze the disputed finding of fact, we first analyze the
court’s conclusion that “a reasonable person would find [Boyle’s] work
environment to be hostile.” Throughout trial, Alum-Line contended Boyle
only made one complaint which conceivably related to sexual harassment.
This one complaint related to an argument between Boyle and Hansmeier over
blueprint measurements on a trailer. Boyle complained to Orr when
Hansmeier told her to “look at the f***ing plan.” Alum-Line argues this
one instance led to the judge’s conclusion that Boyle was subjected to a
hostile work environment.
 This argument is not consistent with the court’s actual findings.
First of all, the heated exchange between Boyle and Hansmeier involved only
one coworker while the court’s finding of fact repeatedly refers to the
harassers as “co-workers.” Second, this single incident was insufficient
to find conduct sufficiently severe or pervasive so that a reasonable
person would find the plaintiff’s work environment to be hostile. To
establish the harassment was severe or pervasive, Boyle had to show she
subjectively perceived the conduct as abusive and that a reasonable person
would also have found the conduct to be abusive or hostile. Farmland
Foods, 672 N.W.2d at 744. Also, because “hostile-work-environment claims
by their nature involve ongoing and repeated conduct, not isolated events,”
the court had to find there was more than just one instance of
inappropriate conduct. Id. at 745. Boyle’s sole complaint regarding the
confrontation with Hansmeier does not satisfy either of these tests.
Because the court found there was a hostile work environment, we conclude
the court determined Boyle was subjected to other instances of offensive
sexual language and conduct at Alum-Line.
 We next focus our attention on the last two findings of fact—“[t]he
defendant knew of the sexual harassment,” and “[t]he defendant did take
steps reasonably calculated to stop the sexual harassment.” Orr stated he
only received one complaint from Boyle concerning a hostile work
environment. That complaint pertained to the incident when Hansmeier told
Boyle to “look at the f***ing plan.” Both Hansmeier and Boyle were
reprimanded over the incident. Beyond this reprimand, Alum-Line took no
others steps to curtail sexual harassment in the workplace while Boyle
worked for Alum-Line.[2] Indeed, the crux of Alum-Line’s defense was that
Boyle did not notify either Gooder or Orr that she was being sexually
harassed, but if she had, Alum-Line would have taken such a complaint
seriously and investigated it thoroughly.
 When comparing these factual findings, we cannot find substantial
evidence to support the court’s finding that Alum-Line took “steps”
reasonably calculated to stop the sexual harassment. One reprimand by Orr
over an isolated incident is not substantial evidence to support a finding
that Alum-Line took steps to stop the “severe or pervasive” sexual
harassment. Because there was not substantial evidence to support a
finding that Alum-Line took remedial action to stop the sexual harassment,
we necessarily conclude, as a matter of law, that Alum-Line failed to
implement prompt and appropriate corrective action once it knew of the
sexual harassment.
 The district court’s remaining factual findings support a judgment for
Boyle under the elements of an ICRA hostile-work-environment claim. See
generally Novak Equip., Inc. v. Hartl, 168 N.W.2d 924, 927 (Iowa 1969)
(stating a finding of insufficient evidence to support the court’s judgment
on one factual finding entitles the appellant to a reversal for entry of
judgment in the appellant’s favor unless there were issues presented but
not decided by the court). Upon remand, the district court shall enter
judgment in favor of Boyle on her ICRA hostile-work-environment claim. The
court shall then determine damages based upon the existing trial record.

 B. Title VII Hostile-Work-Environment Claim
 Boyle brought a simultaneous hostile-work-environment claim under
Title VII. McElroy v. State, 637 N.W.2d 488, 499 (Iowa 2001) (hereinafter
McElroy I). To establish the Title VII hostile-work-environment claim,
Boyle had to prove to a jury the same elements as those set forth in the
ICRA hostile-work-environment claim: (1) she was a member of a protected
group; (2) she was subject to unwelcome sexual harassment; (3) the
harassment was based on sex; and (4) the harassment affected a term,
condition, or privilege of her employment. Beard v. Flying J, Inc., 266
F.3d 792, 797-98 (8th Cir. 2001). If the harassment was perpetrated by a
nonsupervisory employee, she had to additionally show Alum-Line “knew or
should have known of the harassment and failed to take proper remedial
action.” See Stuart v. Gen. Motors Corp., 217 F.3d 621, 631 (8th Cir.
2000).
 The jury was not asked to determine generally whether Boyle proved her
Title VII hostile-work-environment claim; instead, the jury was only
instructed to enter written findings on predetermined issues in the case.
The jury made the following findings: (1) Boyle was subjected to sexual
harassment by offensive sexual language and conduct, (2) the conduct was
based on gender, (3) the conduct was directed at her and was unwelcome and
uninvited, (4) the conduct was sufficiently severe or pervasive so that a
reasonable person would find Boyle’s work environment to be hostile, (5)
Alum-Line knew of the sexual harassment, and (6) Boyle did not prove Alum-
Line failed to take steps reasonably calculated to stop the sexual
harassment.
 Boyle contends the jury’s sixth finding was a result of an improper
jury instruction.
 We review alleged errors in jury instructions for correction of errors
at law. State v. Anderson, 636 N.W.2d 26, 30 (Iowa 2001); Iowa R. App. P.
6.4. A court’s instructions to the jury “must convey the applicable law in
such a way that the jury has a clear understanding of the issues it must
decide.” Thompson v. City of Des Moines, 564 N.W.2d 839, 846 (Iowa 1997).
Reversal is generally required in cases where an instruction is confusing
or conflicting. McElroy I, 637 N.W.2d at 500.
 Boyle claims the district court erred when it gave, over her
objection, instruction no. 17 to the jury. Jury instruction no. 17 stated:

 The plaintiff was an employee at will with the defendant. This
 means that the employer had the right to terminate the plaintiff’s
 employment at any time, for any reason, with or without just cause.
 Therefore, you need not decide whether the employer had just cause for
 terminating her employment. The mere fact that her employment was
 terminated does not establish her claim for damages.

 Boyle claims this instruction is legally incorrect because it does not
provide any exception to the rule that an at-will employee can be
terminated for any reason. Boyle contends this jury instruction could have
led the jury to conclude that Alum-Line’s termination of Boyle’s employment
was a step reasonably calculated to stop the sexual harassment.
 Jury instruction no. 17 was an inaccurate statement of the law because
there are a number of exceptions to the at-will employee doctrine based on
public policy and legislative enactment. For example, in Borschel v. City
of Perry, 512 N.W.2d 565, 567 (Iowa 1994), we held

 Discharge of an employee because of age, race, creed, color, sex,
 national origin, religion, or disability is an unfair employment
 practice. Remedies are provided employees who are discharged in
 violation of [the Iowa Civil Rights Act].

(Internal citations omitted.) Also, in Springer v. Weeks & Leo Co., 429
N.W.2d 558, 560-61 (Iowa 1988), we stated,

 We deem [the Iowa workers’ compensation statute] to be a clear
 expression that it is the public policy of this state that an
 employee’s right to seek . . . compensation . . . for work-related
 injuries should not be interfered with regardless of the terms of the
 contract of hire. To permit the type of retaliatory discharge which
 has been alleged in this case to go without a remedy would fly in the
 face of this policy.

 We also conclude the improper jury instruction was prejudicial to
Boyle. The jury’s first five factual findings indicate Boyle was subjected
to severe or pervasive sexual harassment in the form of sexual language and
conduct. The jury’s sixth finding indicates the jury somehow determined
Alum-Line took steps reasonably calculated to stop the sexual harassment.
But, as discussed above, beyond the one incident where Alum-Line
reprimanded both Boyle and Hansmeier, Alum-Line took no steps to stop any
sexual harassment because it claims it received no reports of sexual
harassment from Boyle.
 Because instruction no. 17 incorrectly states a person can be
terminated for “any reason,” there is a strong possibility the jury viewed
Boyle’s termination as a step taken by Alum-Line that was “reasonably
calculated to stop the sexual harassment.” It was no leap of logic to make
this conclusion because Boyle’s termination was certainly effective at
ending the sexual harassment. Therefore, we strike the jury’s sixth
factual finding and reverse the trial court’s judgment based upon that
finding.
 As discussed above, the district court’s findings of fact support a
judgment for Boyle under the elements of her ICRA hostile-work-environment
claim. Because the elements for the Title VII claim mirror the elements of
the ICRA claim, we conclude, under the doctrine of res judicata, that the
court must also find for Boyle on her Title VII hostile-work-environment
claim. See Heidemann v. Sweitzer, 375 N.W.2d 665, 667 (Iowa 1985) (“Issue
preclusion, one application of the broader concept of res judicata,
prevents a party to a prior action from relitigating in a subsequent action
an issue raised and resolved in the prior action.”). Accordingly, the
court shall enter judgment in favor of Boyle on her Title VII hostile-work-
environment claim and enter damages in conformance with the damages
determined by the court on the ICRA hostile-work-environment claim. See 50
C.J.S. Judgments § 772 (1997) (“Even though a plaintiff may have separate
concurrent or successive rights of action arising out of the same
transaction, he can have only one full satisfaction, which, when obtained,
bars all further actions.”).
 C. Iowa Civil Rights Act Retaliatory Discharge Claim
 Boyle also contends the district court erred in denying her ICRA
retaliatory discharge claim without making any factual findings regarding
the claim.
 When the district court decided the ICRA retaliatory discharge claim,
it explicitly refrained from making any findings as to whether Boyle’s
discharge “was in retaliation for her own complaint of harassment, because
the court does not believe that it needs to resolve these fact questions to
decide this part of the case.” The court went on to make a conclusion of
law that “there [was] no claim or cause of action for retaliatory discharge
in this context.” The court’s statement that it did not need “to resolve
these fact questions to decide this part of the case” indicates it likely
determined the retaliatory claim was moot because it found Boyle did not
prove the hostile-work-environment claim. However, a retaliatory discharge
claim under both the ICRA and Title VII requires that the plaintiff prove
three elements, all of which are distinct from any claim for sexual
harassment. To establish a prima facie case of retaliation under the ICRA,
a plaintiff must show (1) he or she was engaged in statutorily protected
activity, (2) the employer took adverse employment action against him or
her, and (3) there was a causal connection between his or her participation
in the protected activity and the adverse employment action taken. Estate
of Harris v. Papa John’s Pizza, 679 N.W.2d 673, 678 (Iowa 2004); Channon v.
United Parcel Serv., Inc., 629 N.W.2d 835, 861-62 (Iowa 2001).
 Even though her hostile-work-environment claim failed in the original
trial, Boyle still presented enough evidence to warrant a decision on her
retaliatory discharge claim. First, Boyle exercised her right to complain
about the instances of sexual harassment. See Channon, 629 N.W.2d at 865.
Second, she suffered an adverse employment action when her superiors
terminated her employment. Evidence supporting the third element, causal
connection between the complaint and her discharge, was also tendered
through circumstantial evidence—she was discharged for allegedly sexually
harassing other employees one week after she complained that a coworker put
his hand down her blouse. While mere coincidence of timing does not
conclusively establish this element, the timing of the action, combined
with all the other circumstances present in this case, entitles her to a
ruling on her retaliatory discharge claim. See Kiel v. Select Artificials,
Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (“Generally, more than a temporal
connection between the protected conduct and the adverse employment action
is required to present a genuine factual issue on retaliation.”).
 Even though Boyle presented this evidence at trial, Alum-Line contends
Boyle “waived” her claim for retaliatory discharge. In essence, because
Boyle waived the Title VII retaliatory discharge claim by not objecting
when the court presented her with proposed jury instructions not addressing
the claim, Alum-Line contends this waiver carried over to the ICRA claim.
 We do not find Boyle waived her ICRA retaliatory discharge claim.
Boyle clearly pled a retaliatory discharge claim under Title VII and the
ICRA. She also presented evidence demonstrating she was eligible for
relief for retaliatory discharge. When the district court held there was
“no claim or cause of action for damages under Iowa law for retaliatory
discharge in this context,” Boyle filed a rule 1.904(2) motion asking the
court to enlarge or amend its findings and conclusions on this claim.[3]
The court did not address this issue in its post-trial order, but the issue
was still adequately preserved for review on appeal.[4] As aptly stated in
Boyle’s appellate brief:

 No matter how badly a plaintiff’s counsel errs in the jury instruction
 phase of a Title VII case tried simultaneously with an ICRA case, a
 plaintiff should be entitled to a correct decision of her ICRA case by
 an independent trial judge correctly applying Iowa law and arriving at
 fact-findings based upon his [or her] own weighing of the evidence.

 Alum-Line also argues Boyle waived her ICRA retaliatory claim during
the following discussion with the court:

 to the extent there are any matters related to the plaintiff's claim
 against the defendant that were not submitted to the jury that are
 required by Iowa law to be decided by the Trial Court without a jury,
 those matters will be submitted [tomorrow].

The next day the court said:

 The court is making an opportunity available now to present
 whatever trial may be necessary and argument that may be necessary to
 submit the nonjury issues under state law for the court for decision
 incorporating by reference the evidence presented to the jury and
 supplementing the record with whatever other documents or arguments or
 anything else that counsel believe is necessary.

 Boyle’s attorneys indicated they did not wish to present any
additional evidence or make any additional arguments, stating it was their
belief the evidence and arguments presented to the jury were sufficient.
Following Boyle’s statements, Alum-Line made the following argument:

 To me the only issue to be tried under Iowa law contains the same
 elements to prove hostile environment, sexual harassment, and that’s
 the only issue that has been raised by the--by the evidence. No other
 issue has been raised by the evidence. There isn’t sufficient
 evidence to support any other type. There’s no retaliatory discharge
 issue raised.

(Emphasis added.) Boyle was given an opportunity to respond to this
argument, but declined. Alum-Line contends this brief discussion
sufficiently waived Boyle’s retaliatory claim.
 We find no merit to Alum-Line’s argument that Boyle waived her
retaliatory claim by standing silent. Such a rule would require attorneys
to waste precious court time repeating, ad nauseum, their entire case to
the court whenever a judge asked “is there anything else?” Also, we find
it plausible Boyle did not contradict Alum-Line’s contention that there was
no retaliatory discharge claim as she felt it was unnecessary because she
had clearly pled the retaliation claim and presented evidence at trial to
establish her case.[5] Also, it is clear, in context, that Alum-Line’s
statement that “[t]here’s no retaliatory discharge issue raised” was an
argument that the issue was not raised by the evidence. This was not a
statement of issues for the court to rule upon that was agreed to by
Boyle’s non-response.
 The district court’s conclusion of law that there was “no claim or
cause of action for damages under Iowa law for retaliatory discharge in
this context” was flawed. A court cannot determine there is no claim or
cause of action for damages when it makes no findings concerning the
elements of the plaintiff’s case. See Falczynski, 533 N.W.2d at 234. This
failure to apply a correct legal analysis to the claim is reversible error.
 See id. We therefore vacate the trial court’s decision and remand for
reconsideration so that the same district court judge can, on the existing
trial record, make findings of fact, conclusions of law, and judgment on
the ICRA retaliatory discharge claim. See id.
 III. Conclusion
 The judgment on Boyle’s ICRA retaliatory discharge claim is reversed
and remanded so the same district court judge can issue further findings of
fact, conclusions of law, and judgment on the existing trial record. On
remand, the court shall also enter an order granting judgment to Boyle on
her ICRA hostile-work-environment claim; enter an order granting judgment
in favor of Boyle on her Title VII hostile-work-environment claim; and,
based upon the existing trial record, determine damages.
 DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT Reversed
and Remanded with instructions for Further Proceedings.

-----------------------
 [1]Having waived any claim of error based on the trial court’s failure
to instruct on her Title VII retaliatory discharge claim, Boyle does not
contend she should have the opportunity to relitigate this matter. She has
therefore abandoned any opportunity to retry this issue.
 [2]Months after Boyle was terminated, Alum-Line’s workers viewed a
presentation on sexual harassment, but there were no presentations given
during her eight months of employment.
 [3]The rule 1.904 motion requested, among other things, “that the
Court amend its findings of fact to include a finding that the Defendant
discharged the Plaintiff in retaliation for lodging her last complaint of
sexual harassment with the Defendant.”

 [4]When a district court fails to rule on an issue properly raised by
a party, the party who raised the issue must file a motion requesting a
ruling in order to preserve error for appeal. Meier v. Senecaut III, 641
N.W.2d 532, 537 (Iowa 2002). A rule 1.904(2) motion is the proper method
“to preserve error ‘when the district court fails to resolve an issue,
claim or other legal theory properly submitted for adjudication.’ ” Id. at
539 (quoting Explore Info. Servs. v. Iowa Ct. Info. Sys., 636 N.W.2d 50, 57
(Iowa 2001)). In this instance Boyle’s post-trial motion sufficiently
alerted the district court to its omission, and therefore the error was
preserved for our review.
 [5]The present case can be contrasted with an open court colloquy
where the defendant tells the court that the plaintiff has dropped a claim
from the lawsuit. If the plaintiff had not decided to drop the claim, we
would expect the plaintiff to correct the defendant’s statement.