# IN THE SUPREME COURT OF IOWA

No. 14–0806

Filed November 21, 2014

**IN THE INTEREST OF A.M.,**
  Minor Child.

**HEATHER THOMAS,** Subpoenaed Witness,

  Appellant.

---

Certiorari to the Iowa District Court for Polk County, Constance Cohen, Associate Juvenile Judge.

Mental health therapist filed an appeal, treated as a petition for a writ of certiorari, challenging juvenile court order compelling her testimony as to treatment of mother in child-in-need-of-assistance action. **WRIT ANNULLED; CASE REMANDED.**

John P. Roehrick and Carlton G. Salmons of Gaudineer & George, L.L.P., West Des Moines, for appellant.

Michelle R. Saveraid of Youth Law Center, Des Moines, for child.

**WATERMAN, Justice.**

In this case, we review the juvenile court's order compelling a therapist to testify in a child-in-need-of-assistance (CINA) proceeding regarding the mother's mental health treatment. The testimony was sought by the guardian ad litem (GAL) for three minor children. The therapist and mother, asserting the patient–psychotherapist privilege, moved to quash the GAL's subpoena for the therapist's records and testimony. The juvenile court, relying on Iowa Code section 232.96(5) (2013), ruled the therapist need not turn over her notes but must testify. The therapist appealed, and we treat the appeal as a petition for writ of certiorari.

We must decide whether section 232.96(5)'s limited statutory exception to the psychotherapist privilege in CINA adjudicatory hearings trumps the confidentiality afforded mental health treatment under Iowa Code chapter 228, Iowa Code section 622.10, and the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. 104–191, 101 Stat. 1936 (relevant portions codified as amended in scattered sections of 42 U.S.C.). This is a question of first impression, highlighting the tension between vitally important interests: (1) the juvenile court's need for relevant evidence of the mother's mental health to determine the best interests of the children, and (2) the need for confidentiality for effective mental health counseling. We conclude the legislature has made the policy choice to balance these competing interests by allowing the court to compel the therapist's testimony in CINA adjudicatory proceedings, and no contrary result is required under HIPAA. For the reasons explained below, we hold the juvenile court properly ordered the therapist to testify. We annul the writ and remand the case for further proceedings.

## I. Background Facts and Proceedings.

This CINA proceeding involves three minor children: A.M. who is eleven years old, and her half siblings S.W. Jr. and L.W., ages five and three, respectively.[1] A.M.'s father F.M. is serving a federal prison sentence. Until May 29, 2013, the children lived with their mother, C.D., and S.W., C.D.'s paramour and father of the two younger children. On that day, a CINA petition was filed alleging all three children to be in need pursuant to Iowa Code section 232.2(6)(*b*), (*c*)(2), and (*n*). The petition alleged that the parents were using methamphetamines while caring for the children and that S.W. provided a positive drug screen for meth. All three children were removed from their parents' custody the same day under an order of temporary removal and placed with the paternal grandmother of S.W. Jr. and L.W.

At a contested removal hearing on June 6, the juvenile court found these facts about the mother:

> [C.D.] requests that she be permitted to return to the custodial home while the children remain in the legal custody of [the paternal grandmother]. However, her fragility, lack of insight and admitted untruthfulness raise serious protective concerns. It is not credible that she was unaware of the dangers posed by [S.W.'s] active use of methamphetamine given the extensive history of drug abuse and trafficking within the family. She is also clearly in need of trauma informed care to resolve her own therapeutic

---

[1]Heather Thomas in her reply brief suggests the GAL improperly attempts to "extend the record" by referring to prior proceedings. Thomas views the record too narrowly. At the hearing on the motion to quash subpoena, the juvenile court had before it the entire record of the CINA action. The record on appeal includes the juvenile court's prior rulings, other court filings, and the evidence taken at prior hearings in this action. *See* Iowa Code § 232.94A ("Juvenile court records, social records, and the material required to be recorded pursuant to section 232.94 shall be maintained and shall be a part of each hearing relating to the child so long as and whenever the child is a child in need of assistance."); Iowa R. App. P. 6.801; *In re A.M.H.*, 516 N.W.2d 867, 873 (Iowa 1994) (noting evidence properly admitted at prior hearing may be considered in subsequent hearing in CINA proceeding).

issues. She is not thinking clearly. There are numerous examples of problems in decision making; e.g., she sees no financial cost to her family by the father's drug abuse, but is struggling with back bills and currently living in her car.

On June 27, the juvenile court found the mother's mental health issues and improper supervision precluded the children's return to her custody at that time. The juvenile court ordered the Iowa Department of Human Services (DHS) to offer substance-abuse evaluation, therapy, and domestic-violence support for the mother. On July 23, C.D. began individual therapy sessions with Heather Thomas at Eyerly Ball Community Mental Health Center. Eyerly Ball is an Iowa nonprofit corporation providing mental health and case management services to those in need.

At an August 15 dispositional hearing, the juvenile court found: "Mother may reside with the children and the custodian. She has complied with and benefited from services." The juvenile court's order required C.D. to continue therapy and domestic-violence classes under DHS's permanency plan. At a review hearing on November 7, the juvenile court returned custody of the children to C.D., under DHS supervision, but cautioned that C.D. "needs to continue to gain insight regarding the impact of domestic violence on herself and the children." C.D. submitted a letter to the juvenile court from Thomas verifying her attendance at nine therapy sessions and reporting that "[C.D.] shows engagement in therapy and interest in continuing." The juvenile court ordered C.D. to continue participating in both individual therapy and domestic-violence classes. The case was scheduled for further review on April 24, 2014.

A family team meeting was held on February 28, 2014. By that time, the GAL for the children had begun "to get concerning reports from

other professionals involved in this case" and shared them with the DHS caseworker who had her own concerns about C.D.'s lack of cooperation with services, dishonesty, and demeanor. When the GAL learned that the caseworker had not been able to obtain any progress reports regarding the mother's therapy, she subpoenaed Thomas to testify at the April 24 hearing with her therapy notes and attendance records. The subpoena was served on Thomas at Eyerly Ball on April 9.

Eyerly Ball and Thomas took the position that the information sought was confidential, noting the mother had not signed an authorization for its release. On April 16, Thomas filed a motion to quash the subpoena, and C.D. filed a "concurrence" with the motion two days later. On April 24, the juvenile court conducted a combined hearing on the motion to quash and review of the children's cases. At the hearing, the children's GAL argued that "substantive information from Ms. Thomas is necessary to further plan for these children." The GAL clarified that the request for notes was not to admit the therapy notes for inspection by the juvenile court or the parties, but because it had been her "experience in the past that therapists come without those and can't give the juvenile court useful information." Counsel for Thomas argued that HIPAA and Iowa law prevented disclosure of the information. The juvenile court granted the motion to quash conditionally with respect to the psychotherapy notes, but denied it with respect to testimony. The juvenile court also stated that objections to specific questions may be made during her testimony.[2]

---

[2]The children's GAL did not cross-appeal on the issue of whether the juvenile court correctly granted the motion to quash with respect to the psychotherapy notes, and she stated at oral argument in our court that she did not contest that aspect of the juvenile court's ruling. Accordingly, we do not decide whether the therapist could be compelled to turn over her mental health treatment notes in a CINA proceeding.

Thomas filed a notice of appeal on May 13. We treated the notice as a petition for writ of certiorari and granted the petition with oral argument in an expedited appeal. *See generally Crowell v. State Pub. Defender,* 845 N.W.2d 676, 682–87 (Iowa 2014) (describing circumstances when a nonparty may challenge a ruling through a petition for writ of certiorari).

## II.  Standard of Review.

We typically review discovery rulings for abuse of discretion. *Ashenfelter v. Mulligan,* 792 N.W.2d 665, 668 (Iowa 2010). However, we review the juvenile court's interpretation of statutes for correction of errors at law. *Id.* at 668–69; s*ee also State v. Anderson,* 636 N.W.2d 26, 30 (Iowa 2001) (noting the standard of review for a ruling interpreting a privilege statute is for correction of errors at law). "Our standard of review for the admissibility of evidence alleged to be privileged is for an abuse of discretion." *Anderson,* 636 N.W.2d at 30.

"Abuse of discretion may be shown . . . where the decision is grounded on reasons that are clearly untenable or unreasonable. A ground or reason is untenable . . . when it is based on an erroneous application of the law." *Office of Citizens' Aide/Ombudsman v. Edwards,* 825 N.W.2d 8, 14 (Iowa 2012) (citation and internal quotation marks omitted).

## III.  Analysis.

The parties agree that Iowa law controls if it is more stringent than HIPAA in protecting mental health information. We therefore examine the Iowa enactments before turning to HIPAA. We conclude the Iowa protections are more stringent than HIPAA and are dispositive.

We must determine whether the juvenile court erred by compelling Thomas to testify in a CINA adjudicatory hearing regarding her mental

health counseling of the mother, who declined to waive privilege. Thomas and C.D. argue the statutory protection for mental health information in Iowa Code section 228.2[3] and the patient–psychotherapist privilege codified in Iowa Code section 622.10[4] preclude her testimony regarding her treatment of C.D. The juvenile court disagreed, relying on the statutory exception to privileges in Iowa Code section 232.96(5), which provides:

> Neither the privilege attaching to confidential communications between a health practitioner or mental health professional and patient nor the prohibition upon admissibility of communications between husband and wife shall be ground for excluding evidence at an adjudicatory hearing.

We have not previously addressed the interplay between these three statutes. We conclude the more specific provision, section 232.96(5), controls in this CINA proceeding and annul the writ on that basis.[5]

---

[3]Iowa Code section 228.2 states in relevant part, "Except as specifically authorized . . . a mental health professional . . . for a mental health facility shall not disclose or permit the disclosure of mental health information."

[4]Iowa Code section 622.10 states in relevant part:

> 1. A practicing . . . mental health professional, or the stenographer or confidential clerk of any such person, who obtains information by reason of the person's employment, . . . shall not be allowed, in giving testimony, to disclose any confidential communication properly entrusted to the person in the person's professional capacity, and necessary and proper to enable the person to discharge the functions of the person's office according to the usual course of practice or discipline.

[5]Thomas asserts for the first time on appeal a constitutional claim of privacy in mental health records. *See Ashenfelter,* 792 N.W.2d at 672 (noting a qualified constitutional right to privacy in mental health records). We decline to reach this issue because Thomas failed to make a constitutional privacy claim in district court. *See Alvarez v. IBP, Inc.,* 696 N.W.2d 1, 3 (Iowa 2005); *Meier v. Senecaut,* 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Iowa has no common law physician–patient privilege; the privilege is strictly statutory. *Harder v. Anderson, Arnold, Dickey, Jensen, Gullickson & Sanger, L.L.P.*, 764 N.W.2d 534, 537 (Iowa 2009); *see also Travelers' Ins. Co. of Hartford v. Bergeron*, 25 F.2d 680, 682 (8th Cir. 1928) ("The privilege as to communications between patient and physician is purely statutory, there being no such privilege at common law."). A privilege created by the legislature can be limited by the legislature. The fighting issue in this case is whether the statutory privilege and protection for mental health treatment is abrogated for purposes of CINA adjudicatory hearings, such that the juvenile court properly compelled Thomas's testimony without C.D.'s consent.

We begin our analysis of Iowa law by reviewing the operative statutory language in light of our canons of construction. "The goal of statutory construction is to determine legislative intent." *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004). Our starting point is the statutory text. *McGill v. Fish*, 790 N.W.2d 113, 118 (Iowa 2010). We generally "presume words used in a statute have their ordinary and commonly understood meaning." *Id.* at 119. We address each statute in turn, beginning with the provision relied upon by the juvenile court.

**A. Iowa Code Section 232.96(5).** Iowa Code section 232.96(5) provides that the "privilege attaching to confidential communications between a health practitioner or mental health professional and patient . . . shall [not] be ground for excluding evidence at an adjudicatory hearing." Giving this language its plain meaning, it is clear the legislature intended to create a statutory exception to the patient–psychotherapist privilege that otherwise could be asserted to bar testimony regarding mental health treatment in an adjudicatory hearing

in a CINA action. *Cf. Anderson,* 636 N.W.2d at 31–32 (describing a similar provision in section 232.74 as an "exception" to the marital privilege codified in sections 622.9).[6]

Viewed in isolation, section 232.96(5) permits the juvenile court to compel Thomas's testimony. This makes sense because the juvenile court must decide where to place the children, and the mother's compliance with treatment goals and her mental health are highly relevant to that determination. Thomas, who has conducted numerous counseling sessions with C.D. over a span of months, is well positioned to provide the juvenile court as fact finder with vital information to help determine the best interest of the children.[7] But, our analysis does not

---

[6]Iowa Code section 232.74 provides:

> Sections 622.9 and 622.10 and any other statute or rule of evidence which excludes or makes privileged the testimony of a husband or wife against the other or the testimony of a health practitioner or mental health professional as to confidential communications, do not apply to evidence regarding a child's injuries or the cause of the injuries in any judicial proceeding, civil or criminal, resulting from a report pursuant to this chapter or relating to the subject matter of such a report.

In *Anderson,* we held that this exception to the marital privilege "is limited to cases of child abuse that result from acts or omissions of a care provider. It does not apply to injuries to children that result from acts or omissions by a non-care provider." 636 N.W.2d at 36–37. The defendant in that case was accused of statutory rape of a fifteen-year-old employee who was not a family member or resident of his household. *Id.* at 29. We held section 232.74 did not apply. *See id.* at 37. By contrast, Thomas does not argue section 232.96(5) is inapplicable; rather, she argues sections 228.2 and 622.10 prevail.

[7]Thomas argues, in lieu of compelling her testimony, the juvenile court could order C.D. to submit to an independent psychiatric or psychological examination—which she calls an "ingenious solution" crafted by the court of appeals in an unpublished child custody decision. *See In re Marriage of Mulligan,* No. 10–1752, 2011 WL 2420005, * 7 (Iowa Ct. App. June 15, 2011) ("Such an approach provides the trial judge with information relevant to the child custody decision, while preserving the psychiatrist–patient confidentiality."). While an independent examination may be warranted in some CINA cases, the availability of that option does not foreclose the juvenile court's ability to compel testimony of a treating physician or counselor. Testimony based on a longer relationship may be more illuminating than the snapshot of the parent's mental state in a single examination.

stop here. We must decide if other statutory protections for mental health information asserted by Thomas override section 232.96(5). Thomas relies on Iowa Code section 622.10 and chapter 228.

We read related statutes together and attempt to harmonize them. *Root v. Toney*, 841 N.W.2d 83, 90 (Iowa 2013). One canon of construction is particularly helpful here:

> If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision.

Iowa Code § 4.7; *see also Christiansen v. Iowa Bd. of Educ. Exam'rs*, 831 N.W.2d 179, 189 (Iowa 2013) ("One such rule is that the more specific provision controls over the general provision."). Applying this rule here, we hold the limited exception to the patient–psychotherapist privilege in CINA adjudicatory hearings in section 232.96(5) prevails over the general privilege and confidentiality protections for mental health records codified elsewhere.

We have said "[s]tatutes creating privileges are to be liberally construed." *Anderson*, 636 N.W.2d at 35. We do so to further the policies underlying the privilege and for that reason we "normally" will narrowly construe an exception to a privilege. *Id.* at 35–36. Yet, we have also noted that privileges created in section 622.10 are "narrowly construed" because they "impede[] the full and free discovery of the truth." *Miller v. Cont'l Ins. Co.*, 392 N.W.2d 500, 504 (Iowa 1986) (citing *Chidester v. Needles*, 353 N.W.2d 849, 852 (Iowa 1984)). Whether viewed broadly or narrowly, the plain meaning of section 232.96(5) is dispositive. "We are not free to rewrite the section 'under the guise of liberal

construction.'" *Chidester*, 353 N.W.2d at 852 (quoting *State v. Bedel*, 193 N.W.2d 121, 124 (Iowa 1971)).

In this case, we are guided by the specific rule of construction the legislature provided for in chapter 232:

> This chapter shall be liberally construed to the end that each child under the jurisdiction of the court shall receive, preferably in the child's own home, the care, guidance and control that will best serve the child's welfare and the best interest of the state.

Iowa Code § 232.1. We honor the legislature's directive to construe chapter 232 liberally to "best serve the child's welfare." Doing so reinforces our conclusion that the specific statutory exception to the psychotherapist–patient privilege in section 232.96(5) prevails over more general protections for mental health information in other statutes. We apply section 232.96(5) to provide the juvenile court with access to otherwise-privileged, but highly relevant information to help determine the best interests of the children.

**B. Iowa Code Section 622.10.** We have addressed the psychotherapist–patient privilege in CINA proceedings in several prior cases. In *State ex rel. Leas in re O'Neal*, parents appealed the termination of their rights, in part by challenging the juvenile court's admission of mental health records over their objection. 303 N.W.2d 414, 419 (Iowa 1981). Relying on Iowa Code section 232.96(5), we held "[t]he physician–patient privilege is thus clearly abrogated with regard to termination proceedings." *Id.* This decision, however, makes no mention of Iowa Code chapter 228.

Similarly, *In re A.M.H.* involved a mother's challenge to adjudicatory removal and dispositional orders in the CINA proceedings of her daughter. 516 N.W.2d 867, 870 (Iowa 1994). The mother objected to

the juvenile court's admission of her mental health and treatment records. *Id.* at 873. We noted that juvenile courts in Iowa are allowed to make use of hearsay and other evidence that would normally be excluded in our district courts. *Id.* We went on to apply section 232.96(5) to limit the "health professional–patient privilege in section 622.10" as follows:

> The privilege attaching to confidential communications between a health practitioner or mental health professional and patient is not grounds for excluding evidence at a CINA adjudicatory proceeding. Iowa Code § 232.96(5). Because a CINA proceeding is a two-step process, the privilege does not exclude the evidence from being admitted at a CINA dispositional hearing.

*Id.* Again, however, this decision is silent regarding Iowa Code chapter 228. Both *O'Neal* and *A.M.H.* held section 232.96(5) trumped section 622.10 to allow disclosure of mental health information in CINA cases.

In *Ashenfelter*, we considered statutory, as well as constitutional, protections for a mother's mental health records demanded by grandparents seeking visitation rights. 792 N.W.2d at 668. Although the case was rendered moot by the amendment of Iowa Code section 600C.1 addressing grandparent rights, we chose to revisit the confidentiality of mental health records as a matter of "great public interest." *Id.* at 670. We reiterated that both testimony and medical records are privileged under section 622.10, without addressing chapter 228. *Id.* at 671–72. We held the grandparents' "desire for visitation cannot overcome [the mother's] constitutional and statutory privilege against production of her medical and mental health records in a petition for grandparent visitation." *Id.* at 674. But, we expressly limited our holding, stating, "[w]e reach no conclusion regarding the ability of a court

to order disclosure of medical or mental health records to the State in a CINA action." *Id.*[8]

We conclude *O'Neal* and *A.M.H* remain good law. We hold the juvenile court correctly applied section 232.96(5) as an exception to the patient–psychotherapist privilege in section 622.10.

**C. Iowa Code Chapter 228.** Thomas raises an argument our prior cases have not addressed—that Iowa Code chapter 228 precludes her testimony in this CINA action. Iowa Code chapter 228 has received scant judicial interpretation. In *State v. Heemstra,* we noted section 228.2 without setting forth any analysis separate from our discussion of section 622.10. 721 N.W.2d 549, 559–60 (Iowa 2006). The dissent in *State v. Cashen* noted chapter 228's protection for mental health records. 789 N.W.2d 400, 412–13 (Iowa 2010) (Cady, J., dissenting). In *Harder*, we discussed chapter 228, but decided the case under chapter 598. 764 N.W.2d 534 at 537–38. None of these cases was a CINA action.

Iowa Code section 228.2(1) states, "Except as specifically authorized . . . , a mental health professional . . . for a mental health facility shall not disclose or permit the disclosure of mental health information." The parties agree that Thomas is a covered mental health professional, and the testimony at issue constitutes mental health information. The parties disagree whether the GAL's subpoena in this

---

[8]We noted the constitutional protection for the privacy of mental health information is " 'not absolute, but qualified.' " *Ashenfelter*, 792 N.W.2d at 672 (quoting *State v. Cashen*, 789 N.W.2d 400, 406 (Iowa 2010)). The legislature in 2011 amended section 622.10 in response to *Cashen* to mandate certain procedures governing the use of mental health records in judicial proceedings, and we rejected a facial constitutional challenge to that statutory amendment. *State v. Thompson,* 836 N.W.2d 470, 490 (Iowa 2013) (holding Iowa Code section 622.10(4) (2013) is constitutional on its face and supersedes the *Cashen* protocol).

case fits within the disclosures allowed by Iowa Code section 228.6(1), which provides:

> A mental health professional or an employee of or agent for a mental health facility may disclose mental health information if and to the extent necessary, to meet the requirements of section 229.24, 229.25, 230.20, 230.21, 230.25, 230.26, . . . , 232.74, or 232.147, or to meet the compulsory reporting or disclosure requirements of other state or federal law relating to the protection of human health and safety.

Two of the statutes listed are found in the juvenile code sections 232.74 and 232.147. Iowa Code section 232.74 allows use of otherwise privileged testimony "regarding a child's injuries or the cause of the injuries in any judicial proceeding." The GAL and juvenile court did not rely on section 232.74, and there is no claim Thomas's testimony would address an actual injury suffered by the children. Iowa Code section 232.147(1) states, "Juvenile court records shall be confidential. They shall not be inspected and their contents shall not be disclosed except as provided in this section." It goes on to specify exactly who has access to the records and the extent of their access. *Id.* § 232.147. The parties do not claim section 232.147 allows the court to compel the testimony of a mental health therapist.

Iowa Code section 232.96(5) is not listed in section 228.6(1). Thomas argues this omission shows the legislature did not intend section 232.96(5) to be an exception to the protections of section 228.2. Thomas relies on *Kucera v. Baldazo*:

> When interpreting laws, we are guided by the rule of "expressio unius est exclusio alterius." "This rule recognizes that 'legislative intent is expressed by omission as well as by inclusion, and the express mention of one thing implies the exclusion of others not so mentioned.' "

745 N.W.2d 481, 487 (Iowa 2008) (quoting *Meinders v. Dunkerton Cmty. Sch. Dist.*, 645 N.W.2d 632, 637 (Iowa 2002)). The juvenile court rejected Thomas's argument, and so do we. *Kucera* is distinguishable because the statute interpreted in that case lacked a catchall provision or other language indicating the list of Code provisions mentioned was not exclusive. *See id.* at 485 (quoting the amendment to Iowa Code § 20.18 at issue). By contrast, the list of statutes in section 228.6(1) is not exclusive in light of the accompanying catchall provision allowing disclosure of mental health information to "meet the . . . disclosure requirements of other state or federal law relating to the protection of human health and safety." Iowa Code § 228.6(1). CINA proceedings relate to the health and safety of children. We conclude the GAL's subpoena and the juvenile court's order compelling Thomas to testify fall within this catchall provision of section 228.6(1). The *expressio unius* maxim is inapplicable. *See, e.g., United States v. Guzman*, 558 F.3d 1262, 1265 n.1 (11th Cir. 2009) ("[R]eliance on the canon of statutory construction known as *expressio unius est exclusio alterius* is without merit because . . . [a statute] did not . . . preclude the court from imposing the reporting requirement under [the statute's] catchall provision."); *Bailey v. Fed. Intermediate Credit Bank of St. Louis*, 788 F.2d 498, 500 (8th Cir. 1986) ("The applicability of 'expressio unius' depends upon the intent of the drafters of a statute, and the maxim should be invoked only when other aids to interpretation suggest that the language at issue was meant to be exclusive.").

We also conclude that section 232.96(5), as the more specific statute, prevails over the general confidentiality provisions in chapter 228. *See* Iowa Code § 4.7. It would make little sense to hold section 232.96(5) prevails over section 622.10 but not chapter 228. Why would

the legislature expressly open the door to testimony regarding mental health treatment in CINA actions through section 232.96(5)'s limited exception to the psychotherapist privilege in section 622.10, only to close the door in chapter 228? *See Heemstra*, 721 N.W.2d at 559–60, 563 (remanding case for in camera inspection of treatment records despite confidentiality claimed under both section 228.2 and section 622.10). We hold the juvenile court correctly rejected Thomas's argument under chapter 228.

**D. Competing Policies.** We strive to effectuate each statute's purposes when harmonizing interrelated provisions. *See Anderson*, 636 N.W.2d at 35 ("We attempt to find a reasonable construction that 'serve[s] the purpose of the statute and avoid[s] absurd results.'" (quoting *Sourbier v. State*, 498 N.W.2d 720, 723 (Iowa 1993)). We will elaborate on the legislative goal of protecting children because of its tension with another legislative goal—privacy of mental health information.

1. *Access to evidence to determine the best interests of the children.* The protection of children is one of the most well-established duties and public policies of the State of Iowa. "[T]he State has a duty to assure that every child within its borders receives proper care and treatment, and must intercede when parents fail to provide it." *In re I.L.G.R.*, 433 N.W.2d 681, 689 (Iowa 1988). "Both DHS and the juvenile court have the important function of protecting children who are in need of assistance." *A.M.H.*, 516 N.W.2d at 871. It is the duty of the juvenile court when necessary to intervene and remove a child from the care and custody of parents, either temporarily or permanently. *Id.* at 871. "Whenever possible the court should permit the child to remain at home

with the child's parent, guardian, or custodian." Iowa Code § 232.102(5)(*a*).

The juvenile court cannot remove a child from custody without a determination that "continuation of the child in the child's home would be contrary to the welfare of the child, and shall identify the reasonable efforts that have been made." *Id.* § 232.102(5)(*b*); *see also id.* § 232.102(10)(*a*) (defining "reasonable efforts").[9] These determinations, required by law, are essential to the juvenile court's role as the arbiter of both temporary and permanent custody for children in need of assistance. Juvenile courts have the power to "temporarily, even summarily, remove a child pending a hearing on the modification" at any time, and require evidence regarding reasonable efforts. *A.M.H.*, 516 N.W.2d at 871–72 (citing Iowa Code section 232.99, which requires a court to "make and file written findings as to its reason for the disposition").

The GAL argues that, without the testimony of Thomas, the juvenile court will lack important information regarding the mother's

---

[9]Section 232.102(10)(*a*) defines "reasonable efforts" in relevant part as follows:

"*[R]easonable efforts*" means the efforts made to preserve and unify a family . . . . A child's health and safety shall be the paramount concern in making reasonable efforts. Reasonable efforts may include but are not limited to family-centered services . . . . In determining whether reasonable efforts have been made, the court shall consider both of the following:

(1) The type, duration, and intensity of services or support offered or provided to the child and the child's family. If family-centered services were not provided, the court record shall enumerate the reasons the services were . . . judged to be unable to protect the child and the child's family during the time the services would have been provided, judged to be unlikely to be successful in resolving the problems . . . .

(2) The relative risk to the child of remaining in the child's home versus removal of the child.

progress dealing with her mental issues and her fitness to care for the children.  We agree.  As the Michigan Supreme Court explained:

> [T]he purpose of a child protective proceeding is to protect the welfare of the child.  It is in the best interests of all parties for the factfinder to be in possession of all relevant information regarding the welfare of the child.

*In re Brock,* 499 N.W.2d 752, 761 (1993) (citations omitted).  The juvenile court, as the finder of fact, has a compelling need for the therapist's testimony in this case.

2. *The confidentiality required for effective mental health counseling.*  We are equally mindful of the importance of confidentiality to mental health treatment.  Thomas persuasively argues that requiring a therapist to testify without the patient's consent will have a chilling effect on mental health treatment.  We share this concern.  Parents would be understandably reluctant to admit drug use and other behavioral problems to their therapist if they fear disclosure to the court.  Problems hidden from a therapist are unlikely to be treated.  Compelled disclosure can undermine the efficacy of mental health treatment.

The American Psychiatric Association has recognized that confidentiality is essential to effective treatment,[10] a view that has been confirmed by numerous empirical studies.  Deborah Paruch, *The Psychotherapist–Patient Privilege in the Family Court: An Exemplar of Disharmony Between Social Policy Goals, Professional Ethics, and the Current State of the Law,* 29 N. Ill. U. L. Rev. 499, 522–32 (2009)

---

[10]The American Psychiatric Association formed a task force to study the effects of judicially compelled disclosure of patient records, which published a report confirming the importance of confidentiality.  *See Kinsella v. Kinsella,* 696 A.2d 556, 582–83 (N.J. 1997) (citing Am. Psychiatric Ass'n, Task Force Report 31: Disclosure of Psychiatric Treatment Records in Child Custody Disputes 1 (1991)) (quoting and summarizing the findings of the task force).

[hereinafter Paruch] (providing a comprehensive overview of numerous empirical studies finding that confidentiality is key to successful psychiatric treatment). Every state has recognized the importance of confidentiality in the treatment process by creating a statutory psychotherapist–patient privilege. *See* Courtney Waits, Comment, *The Use of Mental Health Records in Child Custody Proceedings*, 17 J. Am. Acad. Matrim. Law. 159, 160 & n.2 (2001) (providing the statutory citation for every state). As the Ohio Supreme Court observed:

> [I]f a parent is fearful that any communications with her provider will not be privileged, she may not be open and truthful during treatment, thereby undermining the effectiveness of treatment and ultimately defeating the goal of remedying the reason for the removal of the child.

*In re Wieland*, 733 N.E.2d 1127, 1131 (Ohio 2000) (internal quotation marks omitted). This concern is exacerbated by the fact that CINA actions precede parental termination actions. A parent who does not cooperate with court-ordered mental health treatment may be at risk of losing their parental rights. Paruch, 29 N. Ill. U. L. Rev. at 562.

We have repeatedly emphasized "the importance of maintaining confidentiality in mental health treatment." *Thompson*, 836 N.W.2d at 483. One court has observed:

> Reason tells us that psychotherapists and patients share a unique relationship, in which the patient's ability to communicate freely without the fear of public disclosure is the key to successful treatment. . . . Moreover, communications with a psychotherapist often involve highly personal matters, the disclosure of which would frequently be embarrassing to the point of mortification for the patient. Indeed, courts and commentators have focused on an individual's right of privacy, a fundamental tenet of the American legal tradition, to justify the psychotherapist/patient privilege.

*Jaffee v. Redmond*, 51 F.3d 1346, 1355–56 (7th Cir. 1995) (citation and internal quotation marks omitted), *aff'd*, 518 U.S. 1, 116 S. Ct. 1923,

135 L. Ed. 2d 337 (1996).  We do not lightly require disclosure of mental health information.

3. *Balancing the competing policies.*  This case involves competing public policies: the mental health patient's right to privacy and the state's interest in ensuring the safety and welfare of children in need of assistance.  Other courts have balanced these policies:

> There are strong public policy reasons for creating [a privilege] exception, particularly when the safety and welfare of a child are at stake.  If an expert witness who treated or consulted with a parent in court-ordered treatment reports only that the parent involuntarily attended counseling sessions, the court is left to wonder whether the counseling sessions were effective or whether the parent continues to experience problems that would impede his or her ability to parent.  If no additional details of the treatment are disclosed, the court does not have material, relevant information upon which to base its decision about the child's fate and the parent's continued right to parent that child.
>
> These are serious concerns that must be weighed against the basic tenet of confidentiality, and the concern that a parent will not be candid and open while undergoing treatment for fear of later disclosure.

*Wieland,* 733 N.E.2d at 1131 (Stratton, J., concurring); *see also Kinsella v. Kinsella,* 696 A.2d 556, 584 (N.J. 1997) ("[T]he value of the therapist–patient relationship and of the patient's privacy is intertwined with one of the most important concerns of the courts—the safety and well-being of children and families."); *Perry v. Fiumano,* 403 N.Y.S.2d 382, 386 (App. Div. 1978) ("[T]he rule of privilege protecting such communications must yield to the 'dominant . . . duty of the court to guard the welfare of its wards.'" (quoting *Bachman v. Mejias,* 136 N.E.2d 866, 869 (N.Y. 1956))). In many states, the privilege is abrogated by statute in CINA proceedings. Paruch, 29 N. Ill. U. L. Rev. at 544 ("[The privilege] is routinely abrogated in . . . child protection proceedings.  Many states, including New York, Florida, and California, abrogate the privilege completely in child

protection proceedings."). Iowa Code section 232.96(5) is but another state legislative abrogation of the psychotherapist privilege for child protection cases.

The Iowa legislature has balanced the competing policies in favor of access to evidence in CINA proceedings. It is not our role to second-guess the policy choices of the elected branches. *See In re Estate of Whalen*, 827 N.W.2d 184, 194 (Iowa 2013) ("Policy arguments to amend the statute should be directed to the legislature."). We are not free to rewrite a statute in the guise of interpretation. *Id.*

**E. The Patient–Litigant Exception.** The parties disagree whether C.D. placed her mental condition at issue. Iowa Code section 622.10(2) contains an exception to the psychotherapist privilege "in a civil action in which the condition of the [patient] is made . . . an element or factor of the [patient's] claim or defense." Iowa Code section 228.6(4) contains a similar exception allowing disclosure of mental health information when the patient "offers [his or her] mental or emotional condition as an element of a claim or a defense." Thomas notes the State has the burden to prove C.D. is unfit and relies on *Ashenfelter*, which held the mother's "mere act of denying [the claim] she is unfit does not fall within the patient–litigant exception in section 622.10." 792 N.W.2d at 672. The GAL argues that C.D. did more to place her mental health at issue, including submitting a letter to the juvenile court from Thomas verifying her attendance at nine therapy sessions and reporting that "[C.D.] shows engagement in therapy and interest in continuing."[11]

---

[11]*Compare Jacobs v. Conn. Cmty. Technical Colls.*, 258 F.R.D. 192, 196–97 (D. Conn. 2009) (holding employee put his mental condition at issue by disclosing letters from therapists), *and Everett v. State*, 572 So. 2d 838, 840 (Miss. 1990) (holding father put his mental condition at issue by requesting therapist to submit letter to court describing treatment), *with In re Sims*, 534 F.3d 117, 126, 142 (2d Cir. 2008)

Because we conclude that section 232.96(5) is dispositive, we do not decide the question whether C.D. placed her mental condition at issue for purposes of section 622.10(2) or section 228.6(4).

**F. HIPAA Compliance.** HIPAA provides that it supersedes any contrary provisions of state law. 42 U.S.C. § 1320d-7(a)(1) (2012). HIPAA regulations have been described as "dense, complex, confusing and lengthy." *Cohan v. Ayabe*, 322 P.3d 948, 956 (Haw. 2014). But, the parties in this case agree Iowa law controls if it is "more stringent" in protecting mental health information than the privacy restrictions imposed under HIPAA. *See* 45 C.F.R. § 160.203(b); *Holman v. Rasak*, 785 N.W.2d 98, 111 (Mich. 2010) ("[A]ny HIPAA standard or requirement that is *contrary* to state law *preempts* state law, unless the state law is *more stringent* than HIPAA. 45 C.F.R. 160, 203. . . . *More stringent* means that the state law provides greater privacy protection than HIPAA. 45 C.F.R. 160.202.").

Under HIPAA regulations, a covered entity generally is not permitted to use or disclose protected health information. 45 C.F.R. § 164.502(a)(1)(i–ii). The federal rule is subject to several exceptions, including a broad exception for disclosures in judicial and administrative proceedings. 45 C.F.R. § 164.512(e). The judicial exception allows a covered entity to disclose any protected health information either in response to a court order or a subpoena. *Id.* The subpoena prong of the exception requires assurances that

---

(concluding a district court abused its authority by requiring disclosure of mental health issues even though patient had previously testified on his communications with mental health professionals), *and In re Matthew R.*, 688 A.2d 955, 961, 967) (Md. Ct. Spec. App. 1997) (holding a letter from a mental health practitioner stating a mother was bipolar but asymptomatic did not put her psychiatric records in issue in a criminal case).

reasonable efforts have been made by such a party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or

. . . that reasonable efforts have been made by such a party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

*Id.* § 164.512(e)(1)(ii)(A–B). The qualified protective order is a court order or stipulation of the parties that "[p]rohibits the parties from using or disclosing the protected health information for any purpose other than the litigation." *Id.* § 164.512(e)(1)(v)(A). Alternatively, the covered entity can provide the information voluntarily as long as it seeks a qualified protective order on its own initiative. *Id.* § 164.512(e)(1)(iv).

We conclude Iowa law provides the more stringent protection for mental health information. *See* Iowa Code § 622.10; Iowa Code ch. 228. As Thomas stated in her appellate brief, "In all respects, Iowa's law, statutory and common, is far more stringent than HIPAA." Although Iowa Code section 232.96(5) abrogates the statutory psychotherapist privilege for purposes of CINA adjudicatory hearings, juvenile court records are automatically kept confidential without the need to obtain a protective order. *Id.* § 232.147. Moreover, while juvenile court proceedings are generally open to the public, the juvenile court may close the hearing on motion of any party or on its own motion. *Id.* § 232.92.[12] The juvenile court's order enforcing the subpoena requiring Thomas to

---

[12]Iowa Code § 232.92 states in full:

Hearings held under this division are open to the public unless the court, on the motion of any of the parties or upon the court's own motion, excludes the public. The court shall exclude the public from a hearing if the court determines that the possibility of damage or harm to the child outweighs the public's interest in having an open hearing. Upon closing the hearing to the public, the court may admit those persons who have direct interest in the case or in the work of the court.

testify, therefore, does not violate HIPAA. *See, e.g., Turk v. Oiler*, 732 F. Supp. 2d 758, 770–71 (N.D. Ohio 2010) (concluding Ohio statute allowing disclosure in specific circumstances is more stringent than HIPAA and therefore not preempted); *Kalinoski v. Evans*, 377 F. Supp. 2d 136, 139 (D.D.C. 2005) (enforcing subpoena after denying motion to quash and rejecting objections under HIPAA); *see also In re C.B.*, 865 N.E.2d 1068, 1072–73 (Ind. Ct. App. 2007) (holding trial court properly considered evidence of mother's positive drug test under HIPAA exception for child abuse); *Bihm v Bihm*, 932 So. 2d 732, 735 (La. Ct. App. 2006) (holding Louisiana law is more stringent than HIPAA and controlled disclosure of counseling records in child custody case); *In re B. Children*, No. NA-35478-81/06, 2009 WL 1176494, *6–8 (N.Y. Fam. Ct. 2009) (surveying caselaw enforcing state statutes abrogating psychotherapist privilege in child abuse cases when HIPAA provides no greater protection).

We hold HIPAA does not supersede Iowa Code section 232.96(5). On remand, Thomas or C.D. may ask the juvenile court to close the hearing to the public during testimony regarding her mental health treatment.

### IV. Disposition.

For these reasons, treating Thomas's appeal as a petition for a writ of certiorari, we conclude the juvenile court properly ordered Thomas to testify at the CINA adjudicatory hearing. We annul the writ and remand the case for further proceedings.

**WRIT ANNULLED; CASE REMANDED.**