# IN THE COURT OF APPEALS OF IOWA

No. 16-0513
Filed June 15, 2016

**IN THE INTEREST OF T.R. and T.R.,**
**Minor Children,**

**J.R., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Plymouth County, Robert J. Dull, District Associate Judge.

The father appeals from the dispositional order placing the children in the custody of the department of human services. **AFFIRMED.**

Robert B. Brock II of the Law Office of Robert B. Brock II, P.C., LeMars, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Kathryn C. Stevens of the Juvenile Law Center, Sioux City, for minor children.

Considered by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**PER CURIAM.**

The father appeals the district court's dispositional order in a child-in-need-of-assistance (CINA) proceeding placing his children in the custody of the department of human services (DHS) for relative/foster care/suitable person placement. He argues the juvenile court's imposition of the most restrictive option under Iowa Code section 232.102 (2015) was not supported by clear and convincing evidence. Because the father's progress during approximately two years of DHS involvement has been minimal at best, we affirm the juvenile court's dispositional order.

The father has two children subject to this proceeding, T.R. (born in 2011) and T.R. (born in 2013).[1] DHS has been involved with the family since January 2014. In September 2015, the family home was in such a condition that it was unsafe for the children. The home had excessive amounts of cat urine and feces and other hazards. The children were voluntarily removed and returned approximately one month later after actions were taken to remedy the state of the home.

At the time of the dispositional hearing on February 26, 2016, there remained concerns with the condition of the home, including a cockroach infestation. Although the parents were aware of the cockroach infestation for some time, they had not yet sufficiently cleared clutter in the home to prepare for a professional extermination. The parents also continued to struggle to keep up with chores and maintain a clean environment for the children. The mother is on disability for medical conditions, and thus her ability to stay afloat of the

---

[1] The children's mother does not appeal.

housekeeping responsibilities is limited. The family had numerous animals, both inside and outside of the home, making upkeep more challenging. Animals inside the home at various times included two litters of kittens, goats, and two chickens and a peacock kept in the laundry room. Despite these circumstances, the father makes only minimal contribution to the maintenance of the home.

In addition to the issues described as to the state of the family home, the juvenile court expressed concern regarding the father's lack of cooperation with DHS services and his limited progress. The court stated:

> Ms. Delutri testified that she has been involved with this family since September of 2014 and that during that entire period [the father] has only sporadically complied with service provider requests and generally refused to cooperate. He, in fact, has now requested a third therapist. He remains unamenable to services, lacks parenting skills, and presents a real possibility of violence within the family setting. He is self-centered and not focused on his children's welfare.

Initially, the father participated only minimally in mental health therapy—failing to consistently attend sessions and proving unwilling to identify and address important issues. To his credit, he has recently become more consistent but now seeks a new therapist, his third therapist if granted. The father has also not been forthright with the mother about finances, refusing to explain where he had spent money despite the family's ongoing financial struggles. The father has exhibited poor communication with the mother and the children, often resorting to yelling rather than working on efficient communication and relationship building. There is also a concern with the possibility of violence due to the father's mention of having and using guns. For example, the father requested that a service provider give him advance notice before visiting the family home because he did

not want to be surprised and accidentally shoot her. Based on the father's ongoing issues and failure to fully cooperate with DHS services, DHS recommended at the dispositional hearing that the father be required to leave the home, or alternatively, that the children be removed and placed in DHS custody.

Consistent with the guardian ad litem's recommendation, the juvenile court concluded removal of the children and placement with DHS was "the only workable plan given the conditions that continue to exist in the home. It is the only plan that allows the department all options necessary to ensure the safety of the children and implementation of recommended and necessary changes." The court also concluded that placement with DHS for relative/foster care/suitable person placement was "the most secure avenue to ensure implementation of needed and identified reasonable efforts and is in the best interest of the children."

The father appeals the dispositional order.

We review CINA proceedings de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "In reviewing the proceedings, we are not bound by the juvenile court's fact findings; however, we do give them weight. Our primary concern is the children's best interests. CINA determinations must be based upon clear and convincing evidence." *Id.* (citations omitted). "Clear and convincing evidence is more than a preponderance of the evidence and less than evidence beyond a reasonable doubt." *In re L.G.*, 532 N.W.2d 478, 481 (Iowa Ct. App. 1995).

Following the dispositional hearing, courts are required to "make the least restrictive disposition appropriate considering all the circumstances of the case." Iowa Code § 232.99(4). Section 232.102(5)(a) further explains:

Whenever possible, the court should permit the child to remain at home with the child's parent, guardian, or custodian. Custody of the child should not be transferred unless the court finds there is clear and convincing evidence that:
(1) The child cannot be protected from physical abuse without transfer of custody; or
(2) The child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance and an adequate placement is available.

Upon our de novo review, we find the juvenile court properly transferred custody of the children to DHS to protect the children from harm which would justify adjudication.

The children were adjudicated CINA pursuant to Iowa Code section 232.2(6)(b), (c)(2), and (g).[2] Due to the father's minimal cooperation with DHS services, limited participation in mental health therapy although improvement has been shown, inability to be forthright regarding finances and to communicate positively with the mother and the children, potential for violence, and maintaining a home unfit for the children, the children have suffered or are likely to suffer the harms which would justify adjudication pursuant to section 232.2(6)(b), (c)(2), and (g). We again acknowledge the father did make some progress throughout the involvement of DHS. However, such limited progress does not overcome the potential harm to the children. *See In re A.J.*, No. 15-1692, 2016 WL 541435, at *7 (Iowa Ct. App. Feb. 10, 2016) ("[The court's] finding that the mother had made

---

[2] Children are adjudicated CINA under Iowa Code section 232.2(6)(b) if their "parent, . . . has physically abused or neglected the child[ren], or is imminently likely to abuse or neglect the child[ren]'"; under section 232.2(6)(c)(2) if they have "suffered or [are] imminently likely to suffer harmful effects as a result of . . . : The failure of the child[ren]'s parent, . . . to exercise a reasonable degree of care in supervising the child[ren]"; and under section 232.2(6)(g) if their "parent, . . . fails to exercise a minimal degree of care in supplying the child[ren] with adequate food, clothing, or shelter and refuses other means made available to provide such essentials."

some progress did not change the determination that the home was still unsafe.").

Further, although section 232.102(5)(a) requires the court to permit the children to remain at home with the parents when possible, "[b]oth DHS and the juvenile court have the important function of protecting the children who are in need of assistance. It is the duty of the juvenile court when necessary to intervene and remove a child from the care and custody of parents, either temporarily or permanently." *In re A.M.*, 856 N.W.2d 365, 376 (Iowa 2014) (citation omitted).

Clear and convincing evidence supports the juvenile court's determination that placing the children in the custody of DHS is necessary to ensure they are not subject to adjudicatory harm while the parents continue to work with DHS to make the required changes. We therefore affirm the juvenile court's dispositional order.

**AFFIRMED.**