**IN THE COURT OF APPEALS OF IOWA**

No. 18-2137
Filed March 6, 2019

**IN THE INTEREST OF T.M.,**
**Minor Child,**

**B.M., Father,**
 Appellant.
_____


 Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.


 A father appeals the order terminating his parental relationship with his now one-year-old daughter. **AFFIRMED.**


 Aaron H. Ginkens of Ginkens Law Firm, P.L.C., West Des Moines, for appellant father.

 Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

 Nicole Garbis Nolan of Youth Law Center, Des Moines, guardian ad litem for minor child.


 Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

When T.F.M. was born in February 2018, her three older siblings were already in the custody of the Iowa Department of Human Services (DHS). Her father, Brian, had ongoing issues with substance abuse, mental health, and physical violence.[1] When Brian made no progress toward reunification with T.F.M., the juvenile court terminated his parental rights. Brian appeals that order.[2]

In his petition on appeal, Brian raises seven issues: (1) Did the State prove termination was proper under Iowa Code section 232.116(1)(h) (2018)? (2) Was termination in T.F.M.'s best interests? (3) Was termination detrimental to T.F.M. because of her close relationship with Brian? (4) Did the State breach Brian's right to confidentiality by offering evidence from his substance abuse counseling and mental health treatment? (5) Should the court have granted Brian six more months to reunify with T.F.M.? (6) Should T.F.M. and her siblings have been placed with relatives rather than in foster care? And (7) should the court have honored the parents' request for increased visitation?

After reviewing the record, we find none of these issues requires reversal.[3] The State established Brian was not a safe custodial option for T.F.M. and moving promptly toward permanency promotes her welfare.

---

[1] The violence included an involuntary manslaughter conviction for causing the death of his two-month-old child.

[2] The juvenile court also terminated the parental rights of T.F.M.'s mother, Sadie, but the supreme court dismissed her appeal as untimely.

[3] We review Brian's claims de novo, which means we adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). Although we are not bound by them, we give weight to the juvenile court's factual findings, especially as to witness credibility. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). The State must offer clear and convincing proof, which means we have no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the

## I.    Facts and Prior Proceedings

The DHS opened child-in-need-of-assistance (CINA) cases in June 2017 for three other children in this family —A.G., G.M., and T.M.[4]  The parents, Brian and Sadie, did not consistently engage in services and tested positive for methamphetamine in December 2017.  Their youngest child, T.F.M., the child at issue in this appeal, was born in February 2018.  The juvenile court ordered T.F.M. removed from her parents' care two days after her birth.

In an April 2018 order adjudicating T.F.M. as a CINA, the court identified Brian's minimization of his substance abuse, his failure to regularly attend therapy for his mental health challenges, and his "unresolved anger issues."  The court found Brian was "dishonest during that hearing as he denied any history of child abuse but after further questioning, he admitted he was previously convicted for manslaughter of his child, D.M."[5]  Brian also had a founded child abuse assessment for indecent contact with a child.[6]

In spring 2018, Brian participated in services, but only "superficially" in the juvenile court's estimation.  The court noted in a May 2018 disposition order that Brian told substance abuse providers "he is only attending because he has to and does not believe he has substance abuse issues."  The court further found Brian had not addressed his history of physical violence toward Sadie and the children.

---

evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (quoting *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000)).

[4] A.G. has a different father than the other children.

[5] According to DHS reports, Brian was convicted of manslaughter in connection with the October 2000 shaken-baby death of his two-month-old child.  At the termination hearing for his older children, Brian denied responsibility for the death of D.M.

[6] According to DHS reports, in 2010, Brian inappropriately touched a child's buttocks while she was asleep.

That summer, the parents both tested positive for methamphetamine. Brian denied substance abuse and "blamed positive drug screens on being around individuals who were using." The parents also missed a critical Family Team Meeting scheduled by the DHS, providing "varying excuses" for their absence. In an August 2018 permanency order, the juvenile court directed the State to file a petition seeking termination of parental rights in T.F.M.'s case.

The State filed its petition in late August 2018. In September, the juvenile court held a termination hearing. Brian did not attend.[7] T.F.M.'s guardian ad litem asked the court to grant the State's petition, observing:

> [D]ishonesty is one of the symptoms or problems of the disease of addiction, and I think it's very clear here today that as we sit here today there's active dishonesty with the Court. . . . I do believe that this child as her guardian ad litem should not have to wait any longer for her parents to make the decision that they are willing and able to safely parent her.

The State presented testimony from a DHS social work supervisor as well as offering several exhibits. The State asked the court to take judicial notice of the files from the CINA and termination proceedings for T.F.M.'s siblings.[8] Without objection from Brian's attorney, the court agreed to "incorporate" the providers' testimony from a prior three-day termination hearing into its current record.

---

[7] His attorney asked for a continuance, which the juvenile court denied. Before the termination hearing began, the mother asserted Brian had influenza and she dropped him off at the Mercy Hospital emergency room on the way to court. The court allowed Brian's counsel to attempt to verify that his client was at the hospital. After a brief recess, counsel reported hospital staff had no record of Brian coming into the emergency room or admissions department.

[8] The juvenile court terminated Brian's parental relationship with T.M. and G.M. in a separate order, which he also appealed. We are also filing our decision in that case today. *In re A.G., G.M. and T.M.*, No. 18-2130.

In November 2018, the juvenile court granted the State's petition to terminate Brian's parental rights under section 232.116(1)(h). The court also found termination was in T.F.M.'s best interests under section 232.116(2) and no factors in section 232.116(3) weighed against granting the petition. Brian contests those findings on appeal.

## II.    Analysis

We start with Brian's challenge to the statutory ground for termination—section 232.116(1)(h). His petition on appeal asserts he resisted termination at the time of the hearing. The State claims Brian did not preserve error because his only resistance was to ask for an additional six months to work toward reunification.

At the close of the termination hearing, Brian's counsel made this record:

> [W]e would ask that the Court not find that the State has met their burden today to find that it is in this child's best interest to terminate both parents' parental rights. We do believe that there has been a bond and a closeness established between Brian and this child, and we believe that exception to the termination applies in this case. We would ask the Court to consider denying the State's petition to terminate parental rights, and in the alternative, the father would ask for additional—the Court to consider additional time to continue working on services for reunification efforts.

Counsel's arguments focused on section 232.116(2) (best interests) and section 232.116(3) (permissive factors), to the exclusion of arguing the State did not prove the statutory basis for termination. "[T]he general rule that appellate arguments must first be raised in the trial court applies to CINA and termination of parental rights cases." *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). Because

Brian did not object to the State's proof under section 232.116(1)(h) at the termination hearing, he cannot do so for the first time on appeal.[9]

We next turn to Brian's second and third arguments, that the juvenile court should have foregone termination because it was not in T.F.M.'s best interests and would be detrimental to her because of the closeness of the parent-child relationship.  *See* Iowa Code § 232.116(2),[10] (3)(c).[11]  Under the three steps in the Code, even if the statutory grounds are met, the juvenile court must consider whether termination is in the child's best interests under the section 232.116(2) framework and whether any of the factors in section 232.116(3) tip the scales away from termination.  *In re P.L.,* 778 N.W.2d 33, 40–41 (Iowa 2010).

The juvenile court recognized safety is at the forefront of any best-interest determination.  And T.F.M. could not be safely reunited with Brian because he had not adequately addressed his substance abuse, mental health, or aggression issues.  The record also shows T.F.M. was well integrated into her foster home, where she has lived since birth with one of her siblings.  *See* Iowa Code § 232.116(2)(b).  As for the closeness of their relationship, Brian has never cared for T.F.M. on his own.  While Brian interacted appropriately with T.F.M. during supervised visitations, the record did not show severing her ties with Brian would

---

[9] On appeal, Brian does not allege which element or elements of section 232.116(1)(h) were unsupported by clear and convincing evidence.  This omission is another basis that prevents our review.  *See State v. Adney*, 639 N.W.2d 246, 250 (Iowa App. 2001) (noting party waives issue by failing to include proper argument on appeal).

[10] "[T]he court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."

[11] "The court need not terminate the relationship between the parent and child if the court finds . . . [t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."

be harmful to T.F.M. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (placing burden on parent to prove "exception to termination").

As his fourth issue, Brian alleges the State violated his right to confidentiality by offering evidence from his substance abuse counseling and mental health treatment. He cites *In re A.M.*, 856 N.W.2d 365, 377 (Iowa 2014), in which our supreme court recognized the "importance of confidentiality to mental health treatment." But Brian does not analyze its application to his case.

Natalie Brown, Brian's substance-abuse counselor, testified at the August 2018 termination hearing for the older children. Brown told the court Brian admitted selling methamphetamine during the CINA cases as a source of income. His mental health therapist, Amanda Burgod, testified Brian was diagnosed with generalized anxiety disorder, bipolar II disorder, and unspecified trauma disorder. Brian also reported to Burgod that he sold methamphetamine. Both providers testified Brian signed a release allowing them to share confidential information with the DHS but asked them not to discuss the methamphetamine sales.

The State argues those releases distinguish this case from *A.M.*, where the mother did not waive privilege when her therapist was called to testify. 856 N.W.2d at 371. Moreover, in *A.M.*, our supreme court decided the legislature balanced the competing public policies—a mental health patient's right to privacy and the State's interest in ensuring the safety and welfare of children in need of assistance—in favor of access to information in the child-welfare proceedings. *Id.* at 378; *see also* Iowa Code § 232.96(5) (stating "the privilege attaching to confidential communications between a health practitioner or mental health profession and patient" shall not be grounds for excluding evidence at a child-welfare hearing).

Without a more substantive argument on Brian's behalf, we cannot find he is entitled to relief under *A.M.*

In his fifth issue, Brian asks for more time to reunify with T.F.M. To continue placement for an additional six months, Iowa Code section 232.104(2)(b) requires the juvenile court to determine the need for removal will no longer exist at the end of the extension. In considering a delay in permanency, the court must bear in mind "if the plan fails, all extended time must be subtracted from an already shortened life for the children in a better home." *See In re A.A.G.*, 708 N.W.2d 85, 92–93 (Iowa Ct. App. 2005). We do not favor an extension in this case. Brian has a long track record of child abuse—resulting in the death of one infant—as well as serious drug addictions. He has not come close to resolving these concerns. The record does not show six more months of services would prevent termination.

In Brian's sixth issue, he argues the juvenile court erred in approving foster care over relative placement for T.F.M. and her siblings. His petition on appeal cites statutes and case law discussing relative notification and placement, but does not specify how this authority impacts his particular situation.[12] *See* Iowa Code §§ 232.84(2), 232.117(3)(c); *In re N.V.*, 877 N.W.2d 146, 150 (Iowa Ct. App. 2016) (analyzing intervenor claims). Accordingly, we find no basis to grant relief.

In his seventh and final issue, Brian raises a reasonable-efforts argument. Specifically, he contends the juvenile court should have granted the parents' request for increased visitation with T.F.M. Although the DHS is obliged to make

---

[12] DHS reports indicate that relative notices were sent out in March 2018. The paternal grandmother indicated she decided not to get involved because "Brian wanted to handle this situation as a man."

reasonable efforts toward reunification, "parents have a responsibility to object when they claim the nature or extent of services is inadequate." *See In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017). Brian does not identify when he alerted the juvenile court that the frequency or duration of his supervised visits with T.F.M. were inadequate.

Assuming Brian did not waive this issue, we find the supervised visitation extended the parents was appropriate to the needs of T.F.M. and her siblings. Brian and Sadie had two-hour visits with all four children twice weekly. The agency worker who supervised the visits reported Brian sometimes behaved oddly during the encounters, once spending more than forty-five minutes in the restroom. Given the ongoing concerns about Brian's substance abuse and aggressive behavior, it would not have been consistent with T.F.M.'s best interests to move toward more extensive or unsupervised visits.

**AFFIRMED.**