# IN THE COURT OF APPEALS OF IOWA

No. 21-0806
Filed October 20, 2021

**IN THE INTEREST OF J.V., A.V., and A.V.,**
**Minor Children,**

**J.V., Father,**
        Appellant,

**J.F., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Hancock County, Karen Kaufman

Salic, District Associate Judge.

A mother and father separately appeal from the termination of their parental

rights.  **AFFIRMED ON BOTH APPEALS.**

Jane M. Wright, Forest City, for appellant father.

Theodore J. Hovda, Garner, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant

Attorney General.

Carrie Jean Rodriguez, Garner, attorney and guardian ad litem for minor

child.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**VAITHESWARAN, Judge.**

A mother and father had a child in 2018. The father also had two other children, born in 2009 and 2011. Their mother passed away, and he assumed their care.

The father had a history of assaultive conduct, including two assaults on the mother of the youngest child, in the children's presence. The department of human services, which had been monitoring the older children pursuant to an interstate compact agreement, filed a child-in-need-of-assistance petition. The district court adjudicated the children in need of assistance. The youngest child was placed with his mother under departmental supervision. The mother lived with a relative who agreed to care for the father's older two children. In time, the children were transferred to foster care.

The district court terminated parental rights to the youngest child pursuant to Iowa Code section 232.116(1)(h) (2021) and to the older two children pursuant to section 232.116(1)(f). The provisions require proof of several elements, including proof of the children's ages and proof they cannot be returned to parental custody. Both parents appealed.

## I.    *Mother*

The mother contends (1) the State failed to prove the child could not be returned to her care under section 232.116(1)(h)(4); (2) termination was not in the child's best interests; and (3) the district court should have invoked an exception to termination based on the parent-child bond.

The district court noted that the mother "had a number of ups and downs over the course of the case." She maintained appropriate housing but "continue[d]

to deny accountability for her criminal offenses and lack[ed] engagement with mental health and substance abuse treatment." The court also cited instances of poor judgment. The court concluded "reunification cannot safely occur today." On our de novo review, we agree with the court's findings.

The department reported that the mother was arrested for operating a motor vehicle while intoxicated several months before the termination hearing. The charge remained unresolved at the time of the termination hearing. The mother failed to attend therapy sessions on a regular basis and did not address "any substance abuse issues since involvement began." She "was asked to provide drug testing on five occasions but only provided a sample once." Although the sample was negative, "[s]he was aware prior to the first testing that refusals are considered positive drug tests." The mother also "struggled to maintain the visitation schedule," despite the service provider's flexibility, and evinced "impulsive[]" and "irresponsibl[e]" behaviors.

A department employee testified the child could not be returned to the mother's care. We conclude the State proved the elements of Iowa Code section 232.116(1)(h).

Termination must also be in the child's best interests. Iowa Code § 232.116(2). The mother refused to sever contact with the child's father despite the existence of a no-contact order and despite the physical harm that befell her and the emotional harm resulting from the children's exposure to domestic violence. While she did "very well" at visits in a structured setting, the service provider who supervised visits stated things went poorly without structure. Compounding the problem was the mother's apparent alcohol abuse and her

4

failure to seek treatment. On this record, we agree with the district court that return of the child to her care would have compromised the child's safety. Termination was in the child's best interests.

We are left with the mother's assertion that the district court should not have terminated her parental rights in light of the "close bond" she shared with the child. *See id.* § 232.116(3)(c). The service provider who supervised visits agreed "the two of them [were] clearly bonded" and "love[d] each other." But the child's safety was the paramount consideration. In light of the evidence cited above, we conclude the district court appropriately declined to grant the permissive exception to termination.

We affirm termination of the mother's parental rights to her child.

## II.    *Father*

The father (1) challenges the State's evidence supporting the grounds for termination, including proof that adjudicatory harm still existed; (2) argues termination was not in the children's best interests; and (3) challenges the State's failure to provide and file certain documents before the State filed its termination-of-parental-rights petition.

As noted, the district court terminated the father's parental rights pursuant to two statutory grounds requiring proof the children could not be returned to parental custody. *See id.* § 232.116(1)(f), (h). The court cited his denial of "substance issues in the face of his continued use," his "circumvent[ion]" of drug testing and denial of alcohol use, his "limited support system," and his limited participation in certain reunification services. The record supports these findings.

The father tested positive for methamphetamine, oxycodone, and marijuana. According to a department employee, he provided two drugs tests that were "inconsistent with human urine"—both in 2021. Another test was "positive for hydrocodone, oxycodone, and extended opiates." Although he had "two clean UA's," one preceded the latest positive test. According to a department employee, he had "not been participating in [substance-abuse] treatment."

The father acknowledged his failure to obtain treatment. He said he completed "a 28 day in-patient treatment way over a year ago," and was trying to get substance abuse treatment "started up again" but had not engaged in therapeutic sessions for "some time."

The father's drug use together with his minimal participation in reunification services posed a threat of adjudicatory harm to the children. *See id.* § 232.116(1)(f)(4), (h)(4); *In re Q.G.*, 911 N.W.2d 761, 773 (Iowa 2018) ("We have recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children."); *In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016) ("[A] child cannot be returned to the custody of the child's parent under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication." (quoting *In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992))). The State proved the children could not be returned to the father's custody under Iowa Code section 232.116(1)(f) and (h).

We turn to the father's contention that termination was not in the children's best interests. In his view, many of the State's allegations "were based solely on unsubstantiated hearsay and speculation."

"[J]uvenile courts in Iowa are allowed to make use of hearsay and other evidence that would normally be excluded in our district courts." *In re A.M.*, 856 N.W.2d 365, 373 (Iowa 2014). That said, we need not rely on the hearsay examples cited by the father because he confirmed the State's key allegation of untreated substance abuse. While he minimized the extent of his usage, the district court gave his testimony little credence. We give weight to the court's credibility finding. *See In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021). We conclude termination was in the child's best interests.

Finally, the father argues the State failed to file case permanency plans and social history reports "until after a [child-in-need-of-assistance] [r]eview hearing." The State responds that the father did not preserve error on the issue, "articulate a remedy for" the omission, or "state how he was prejudiced." We agree with the State. The father failed to raise the issue during the child-in-need-of-assistance proceeding, the documents were ultimately filed, and the substance of the documents was contained in department reports and orders filed with the court. Without belaboring the point, the belated filing of these documents does not warrant reversal.

We affirm the termination of the father's parental rights to his three children.

**AFFIRMED ON BOTH APPEALS.**