# IN THE COURT OF APPEALS OF IOWA

No. 20-0781
Filed August 19, 2020

**IN THE INTEREST OF C.M., J.M., and B.M.,**
**Minor Children,**

**J.M., Mother,**
    Appellant,

**T.M., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Cass County, Jennifer A. Benson,

District Associate Judge.

A mother and father separately appeal the juvenile court order terminating

their parental rights. **AFFIRMED ON BOTH APPEALS.**

Donna Bothwell of Bothwell Law Office, Logan, for appellant mother.

William T. Early, Harlan, for appellant father.

Thomas J. Miller, Attorney General, and Meredith Lamberti, Assistant

Attorney General, for appellee State.

Karen Mailander of Mailander Law, PLC, Anita, attorney and guardian ad

litem for minor children.

Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

Jessica and Tony are the parents of three children under the age of five. The juvenile court terminated their parental rights to those children, and they filed separate petitions on appeal. Tony only challenges the denial of his motion to continue the termination trial. Jessica contends (1) the State did not prove grounds for termination, (2) the Iowa Department of Human Services (DHS) did not make reasonable efforts to reunify their family, and (3) more time for reunification would be in the children's best interests. Finding no merit in these four claims, we affirm on both appeals.

## I.    Facts and Prior Proceedings

The children at issue are J.M., who was born in September 2015; C.M., who was born in December 2016; and B.M., who was born in January 2019.[1] The DHS first intervened in March 2016 when J.M. was just an infant, citing the parents for a lack of supervision. That was the first of four founded child abuse assessments against the parents. The ongoing concerns were substance abuse by both parents, domestic violence perpetrated by Tony, and Jessica's mental-health impairments.

The juvenile court removed J.M. and C.M. from their home in April 2018 and adjudicated them as children in need of assistance (CINA) two months later. They have bounced around ever since, experiencing ten different placements through the duration of the CINA case. A couple of those placements were back with

---

[1] Tony is the biological father of J.M. and B.M., and the legal father to C.M. Paternity for C.M. was uncertain.

Jessica when she made strides in substance-abuse treatment. But those spells of success were soon followed by setbacks, leaving the children in precarious situations.

When B.M. was born in early 2019, his siblings were in relative placement. Jessica resumed care of all three children that spring. But within a month she was hospitalized in a mental-health emergency. And the DHS learned that she and Tony were using methamphetamine while caring for the children. The DHS again removed the children, placing the older children in foster care in late May 2019. The baby's whereabouts were unknown until early June when authorities found him in Tony's apartment. B.M. had scratches on his forehead and a painful case of diaper rash.

Through the summer and fall of 2019, both parents continued to struggle with drug and alcohol abuse. The most glaring incident occurred in mid-October when emergency responders found Jessica unresponsive in a friend's backyard. Upon arrival at the hospital, she tested positive for methamphetamine and benzodiazepines and had a blood alcohol level of .275. She spent several days in intensive care. A few weeks later, she returned to the emergency room after again consuming methamphetamine and alcohol as well as injecting the opioid, Dilaudid.

During those months, the parents attended supervised visits with the children. But the interactions were not always positive. The children would act out, and the parents had a hard time controlling or consoling them. By October, the parents' attendance at visits waned. In November 2019, neither Jessica nor Tony participated in visits with the children. They attended only two visits in

December. Also that month, Jessica continued to abuse illegal drugs and suffer mental-health crises, resulting in three more trips to the emergency room.

In January 2020, the State filed a petition to terminate parental rights. As the juvenile court found, "At the beginning of March 2020, Jessica's already serious substance abuse and mental health issues escalated." On March 6, the court approved an application for involuntary hospitalization of Jessica as a chronic substance abuser after holding a hearing under Iowa Code section 125.82 (2020). That same day, the juvenile court heard testimony on the termination petition. The court terminated parental rights in a May order. Both parents appeal.

## II. Scope and Standards of Review

We review termination-of-parental-rights proceedings de novo. *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018). We are not bound by the juvenile court's findings of fact. *Id.* But we give them weight, especially in assessing witness credibility. *Id.* Despite the overarching de novo review for termination cases, we review the denial of Tony's motion to continue for an abuse of discretion. *Id.* An abuse occurs when the court grounds its decision on reasons that are clearly untenable. *In re A.M.*, 856 N.W.2d 365, 370 (Iowa 2014). Fundamental to all levels of review is our foremost attention to the children's best interests. *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

## III. Analysis

### A. Motion to Continue

We start with Tony's argument that the juvenile court abused its discretion in denying his motion to continue. At the start of the termination hearing, Tony's counsel moved for a continuance. Counsel asserted: "I haven't had a chance to

talk with my client really for several months, and I met with him just briefly this morning but really haven't had an opportunity to adequately prepare." Jessica's attorney joined in the request for a continuance.

From the bench, the juvenile court ruled: "Based on the history of the case and the fact that the children have been removed from their parents' home in this case since June of 2019, I am going to deny the motion to continue as further delays of permanency are not warranted." In its written ruling, the court expanded on its rationale, blaming Tony's lack of involvement in the CINA case for the inability of his attorney to fully prepare for the termination trial. The court also noted the attorneys, who were experienced in juvenile court and familiar with this case, had ample time "to prepare a defense as to the statutory grounds for termination." Finally, the court reasoned it was not in the children's best interests to delay permanency.

Like the juvenile court, we find a delay would have been detrimental to the best interests of J.M., C.M., and B.M. *See M.D.*, 921 N.W.2d at 233. The court did not abuse its discretion in denying a continuance. Tony had an opportunity to be heard at the termination hearing. *See* Iowa Code § 232.112. But he chose to present no evidence. We find the juvenile court properly exercised its discretion in denying Tony's motion to continue.

## B.    Statutory Basis for Termination

We next turn to Jessica's argument that the State did not present clear and convincing evidence to support the grounds for termination under Iowa Code section 232.116(1). The juvenile court terminated Jessica's rights under

paragraphs (e) and (*l*) as to all of the children, paragraph (f) as to J.M., and paragraph (h) as to B.M.

When the juvenile court terminates based on several grounds, we may affirm the order on any ground supported by the record. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We find termination was proper under section 232.116(1)(*l*).

That paragraph applies if the evidence shows:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.
> (2) The parent has a severe substance-related disorder and presents a danger to herself or others as evidenced by her prior acts.
> (3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to her custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

Iowa Code § 232.116(*l*).

The second element requires proof of "a severe substance-related disorder." *Id.* § 232.116(1)(*l*)(2). The legislature defined that term as "a diagnosable substance abuse disorder of sufficient duration to meet diagnostic criteria specified within the most current diagnostic and statistical manual of mental disorders published by the American psychiatric association that results in functional impairment." *See id.* § 125.2(15).

At trial, the juvenile court granted the State's request to take judicial notice of the court order affirming Jessica's March 2020 commitment under chapter 125 (dealing with substance-abuse related disorders). In that order, the court found Jessica had been diagnosed at the Audubon County Hospital with "amphetamine use disorder, severe." The order noted health professionals recommended she be

committed to inpatient treatment because of her suicidal ideations, hallucinations, and inability to make treatment decisions.[2]

On appeal, Jessica contends the State did not offer clear and convincing evidence that she "continues to present a danger to herself and others." She insists any danger subsided following her inpatient commitment. She also points out that during the CINA case she had some treatment successes and "long bouts of sobriety."

In our de novo review, we find the State offered clear and convincing evidence that, as shown by her prior acts, Jessica presented an ongoing danger to herself and her children because of her severe substance-abuse related disorder. The record contains no evidence that her involuntary hospitalization, which coincided with the time of the termination hearing, would resolve her persistent and long-standing substance-abuse disorder. In fact, judging from her past efforts at treatment, she likely continued to present a danger. For example, her inpatient treatment at Heart of Iowa in the summer of 2018 did not result in reunification with the children. And she continued to use methamphetamine despite her outpatient treatment at Zion Recovery in the spring of 2019. Later that summer, she left inpatient treatment at Heartland Family Services against medical advice. Her hospitalizations precipitated by drug and alcohol abuse repeated through the fall and winter of 2019. In early January 2020, she began outpatient

---

[2] Jessica complains on appeal that "no evidence regarding the statements made in the committal hearing was admitted in the termination case, including any statements from health professionals." Yet at trial, Jessica's counsel objected to the court taking judicial notice of those "sealed court filings." The juvenile court took judicial notice of the court order in the substance-abuse commitment case, citing *In re T.C.*, 492 N.W.2d 425, 429 (Iowa 1992).

treatment at Lydia House, only to quit after two days. At a visit with the children on January 12, Jessica exhibited paranoid delusions. Six days later, she arrived at the emergency room admitting to methamphetamine use.

This pattern of fits and starts with treatment bodes poorly for reunification. At the time of the termination hearing, Jessica's severe substance-abuse disorder impaired her ability to make sound treatment decisions and posed a serious risk to her own well-being and that of the children. We find clear and convincing evidence in the record that, given her prognosis, Jessica was unable to resume custody of the children within a reasonable time considering their young ages and their need for a permanent home. We affirm termination under paragraph (*l*).

### C.      Reasonable Efforts

Jessica next argues the DHS did not make adequate efforts toward reunification. She contends that when the court adjudicated the youngest child, B.M., as a CINA, it did not hold an initial dispositional hearing as required by Iowa Code section 232.102(9)(a). Jessica also complains she was only offered three months of services to reunify with B.M.

In response, the State notes the family had already been involved with juvenile court services for J.M. and C.M. when B.M. was born in January 2019. The following June, the DHS removed all three children from Jessica's care because of her continued substance abuse and erratic behavior. In July 2019, all parties agreed to a joint CINA adjudication and dispositional hearing. Jessica is not entitled to relief on this procedural issue.

The DHS must "make every reasonable effort" to return children to their home as quickly as possible consistent with their best interests. *See In re C.B.,*

611 N.W.2d 489, 493 (Iowa 2000) (quoting Iowa Code section 232.102(7)). "The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *Id.* Our focus is on the parent's response to the services provided. *Id.* at 494. The State met its burden here. The DHS offered services to Jessica consistent with the best interests of all three children. But she was unable to overcome her parenting deficiencies, largely due to her severe substance-abuse disorder. She is not entitled to relief on this issue.

### D.     Best Interests and Delay of Permanency

Jessica also argues giving her more time to reunify would be in the best interests of the children. We disagree. We determine best interests under the framework in Iowa Code section 232.116(2). That provision focuses on the children's safety, as well as the best placement for furthering their "long-term nurturing and growth" and their "physical, mental, and emotional condition and needs." *See* Iowa Code § 232.116(2). Delaying permanency would not serve the children's best interests. The record shows the children suffer behavioral and emotional setbacks after interactions with Jessica. The juvenile court believed waiting to terminate parental rights "would be traumatic and detrimental to the children's futures." In our de novo review, we agree with that assessment.

**AFFIRMED ON BOTH APPEALS.**